## EX PARTE TRENHOLM.

1. In order to establish a resulting trust in lands conveyed to the grantee, it is necessary that an actual payment of the purchase-money, or some definite portion of it, should be clearly proved to have been made by the *cestui que trust* at the time of the purchase.

2. Lands conveyed to a judgment debtor become instantly subject to the lien of the judgment, unless there be some equity then existing superior to such lien; it cannot be defeated by a subsequent payment of the purchase-money by a third party.

3. A., against whom there was an outstanding judgment, purchased land in his own name, and paid for it with a check upon funds in bank to his credit, and charged the same on his books to an account with certain adjacent property owned by himself and B. jointly, the income from which A. alone collected, and which was then in credit with him—there being at the time no agreement between the two concerning the matter. After deducting such payments, divisions of profits from the property so held in common, and also from the new purchase, were made, and balances due to B. were credited to his indebtedness on another account in A.'s books against B., who, upon a full adjustment of his several accounts with A., was indebted at all times until after the death of A. *Held*, that in the land so purchased there was no resulting trust in favor of B., and that it was subject to the lien of the outstanding judgment against A.

Before THOMSON, J., Charleston, June, 1880.

The opinion states the case.    The Circuit decree, omitting its statement of the petition, was as follows:

The case was referred to the master, Hon. W. D. Porter, who, upon examination, held that a trust resulted in favor of the petitioner, and so reported.    The case comes before the Circuit Court upon exceptions to the master's report, filed by Christopher F. Hampton, administrator and creditor of George A. Trenholm, by judgment in the United States Circuit Court.    This judgment was recovered in June, 1869, against George A. Trenholm individually and as a member of the firm of John Fraser & Co.

The first exception is, that the money which was paid for the property was not the money of Frank H. Trenholm when the payments were made; and that George A. Trenholm did not make the purchases as a nominal purchaser with the money of Frank H. Trenholm as the real purchaser.    There seems to be little difference of opinion as to facts.    The exception is that, in fact, the testimony does not prove a resulting trust.

The principal facts relied on by the judgment creditor are found in the books of George A. Trenholm & Son (William L. Trenholm), which exhibit accounts kept with the petitioner under three heads or divisions, namely:    1.    That for " Atlantic

Wharves." 2. That for "Individual Account," and, 3. That for "Security Account." The money with which the purchases were paid was charged to "Atlantic Wharves." The judgment creditor charges that, upon the other accounts, the petitioner was in arrears; and was so for a long time after the purchases and until 1877. That the three accounts should be aggregated and show a balance in the petitioner's favor, before George A. Trenholm could have any money of the petitioner's in his hands, from the use of which a trust could result.

As a fact, however, there do not seem to have been stated any regular adjustments of these three accounts, with intent to show that the parties regarded a general balance, at certain periods, necessary to declare and fix the indebtedness of one to the other. For, although a balance may have been carried from one of the accounts to the other, still it appears upon the settlements of the account of "Atlantic Wharves," that the net balance was struck and divided, and the fourth of F. H. Trenholm carried to the "Security Account," without reference to what would be the general balance upon the three accounts.

The right of the judgment creditor cannot be greater than that of George A. Trenholm, were he living. It must be taken for granted that entries in the books of George A. Trenholm & Son were known to George A. Trenholm. The charge to "Atlantic Wharves" of the purchase-money, is a deliberate entry by George A. Trenholm, that he took to pay for his purchases, money, one-fourth of which he knew was the petitioner's. The striking of the balance afterwards, and division of the net proceeds, was a confirmation of this use of the money. The money, at the time when charged to "Atlantic Wharves," was the money of George A. Trenholm and of the petitioner; and the petitioner's right to his part could not be affected by balances struck afterwards or the state of the general account.

The second exception is, that Frank H. Trenholm was not personally a party to the transaction (purchase), in name or fact, and the money was paid by a check of George A. Trenholm & Son. Admitting that Frank H. Trenholm was not personally connected with the transaction, that is only to state what often occurs in cases of resulting trusts. The right or title does not

depend upon a contract made; it rests in equity upon the ground that he is the owner who paid the money, though he may not be connected, personally, with the purchase. Though the payments were made by checks of George A. Trenholm & Son, still the source from which the money was drawn or derived is shown, namely, by the charge on "Atlantic Wharves." Admitting that some transaction, intermediate or temporary, occurred, the payment rests upon the profits of "Atlantic Wharves," according to the proof.

The third exception is, that the judgment of C. H. Hampton attached upon the legal interest in the lots the moment they were conveyed to George A. Trenholm, in 1873 and 1874; also on his equitable interest, for the reason that he paid his own money therefor—and that such interest could not be divested by any settlement made with F. H. Trenholm after his father's death. This exception and the fourth are so nearly connected that they may be considered together. There is no doubt but that, to the extent of three-fourths of the property purchased, the interest vested in George A. Trenholm. The whole legal estate was conveyed to him, and, so far as it was not affected by F. H. Trenholm's equity, the judgment bound the property.

But it is plain that an assumption that the judgment bound the whole equitable interest because George A. Trenholm paid the whole purchase-money, is taking the point in dispute for granted. The foundation of the petitioner's claim is a denial that George A. Trenholm did pay the whole price of the lots with his own money. The petitioner's claim is, that at the same moment George A. Trenholm paid the purchase-money from profits of "Atlantic Wharves," he became trustee for the petitioner. In other words, the money that acquired the legal estate for George A. Trenholm acquired at the same time to the extent of one-fourth the equitable interest for the petitioner.

It is not to be overlooked that the money—the profits of "Atlantic Wharves"—was undivided, and that until division the money was the money of both, though in parts unequal in value. Had the money been separated into parts—three-fourths to George A. Trenholm and one-fourth to the petitioner—and G. A. Trenholm, believing that his son would unite with him in

I

the purchases, had from his own part paid the whole, and, after payment to the vendor and title made to himself, the son had paid his father the one-fourth, it might well be doubted if there would be a resulting trust. Before the judgment could attach upon the lots the title in George A. Trenholm must be complete. Here the legal estate vested in G. A. Trenholm and the equitable estate in one-fourth in F. H. Trenholm.

In regard to the fifth exception, it may be said that there is no question of the principle that the money of the party claiming a resulting trust must, in the beginning, enter into the transaction. If there were material accounts between parties which awaited a settlement, and upon adjustment it was found that the debtor had invested money in lands instead of paying his creditor, the creditor could have no claim on the lands as a resulting trust. The reason is obvious that until such settlement the creditor had no money in his debtor's hands which he could call his; but in the present case in every dollar of profits of "Atlantic Wharves" when made, the petitioner was entitled to his quarter in the same right that G. A. Trenholm was to his three-quarters, provided he had not overdrawn it, etc.

As to the sixth exception, it is to be observed that the judgment was obtained before the lots were purchased. It follows, of course, that the contract on which the judgment rests must have existed before the judgment. Then no credit was given to G. A. Trenholm on the appearance of ownership of property by possession, or upon unrecorded deeds. The complaint, then, is that forbearance was extended to G. A. Trenholm, upon the belief he was the owner of property (of which he was indeed in great part) when he was not wholly the owner. The *gravamen* of the complaint as affecting F. H. Trenholm in this exception is, that he was silent when he should have spoken out. But the elements of this species of covin are wanting. Whatever may have been said by G. A. Trenholm, deceased, (and death has closed his lips,) there is no proof that any action of the judgment creditor rested upon either the silence or action of F. H. Trenholm. He never was in a situation that bound him to speak out, and when silence would be a wrong.

If George A. Trenholm did speak as if he had been the sole

claimer of the property purchased, this surely does not alter the fact. What is alleged he said, has not the force of a denial of F. H. Trenholm's right. In any event it can be no more. The claim itself is not adverse. The declarations admit a right in F. H. Trenholm whilst declaring the uses to which the purchases would be applied, namely, to attach them to "Atlantic Wharves" or convey to his son at some future time.

Striking out the testimony of F. H. Trenholm as to conversations had with his father in his life-time, the other proof appears sufficient to establish a resulting trust for the petitioner in the lots of land described in the petition, conveyed to George A. Trenholm. It is ordered, adjudged and decreed that the exceptions of C. F. Hampton, the judgment creditor, be over-ruled, and the findings of fact and conclusions of law of the master made the judgment of the court.

C. F. Hampton, administrator, the judgment creditor of Geo. A. Trenholm, appealed to this court upon several exceptions, raising the precise points determined by this court, and others not considered.

*Messrs. Simonton & Barker*, for appellant, cited 2 *Johns. Ch.* 405; 4 *East* 577; 2 *Atk.* 71, 150; 15 *Ves.* 350; 1 *Spenc. Eq. Jur.* 508, 510, note *c ;* 4 *Kent* 305; 3 *Paige* 390; 10 *Bac. Abr.* 209; 4 *Watts & S.* 149; *Ad. Eq.* 138; *Sugd. Vend. & P.*, ch. *XXI.*, § 1; 6 *Cowen* 726; 4 *Desaus.* 505; 17 *Wall.* 59; 3 *Desaus.* 539; 19 *Iowa* 325; 7 *Brown P. C.* 279; 8 *DeG., M. & G.* 787; 5 *Watts* 451; 18 *Penn. St.* 283; 8 *Serg. & R.* 485.

*Messrs. DeSaussure & Son*, contra, cited *Perry Trusts*, §§ 124, 125, 134; 2 *Story Eq. Jur.*, § 1201; *Tiff. & B. Trusts* 22, 31; 1 *Desaus.* 289; 4 *Id.* 487; 3 *Greenl. Evid.*, § 365; 1 *Strobh. Eq.* 112; 6 *S. C.* 102; 1 *Johns. Ch.* 582; *Ad. Eq.* 167, note *;* *Rich. Eq. Cas.* 172; 16 *S. C.* 632.

March 27th, 1883. The opinion of the court was delivered by MR. JUSTICE McIVER. F. H. Trenholm, by this petition, asks that he may be allowed to intervene in the cause above

stated, which was a proceeding for the settlement of the estate of George A. Trenholm, under which the lots of land hereinafter referred to have been sold as part of his estate, for the purpose of setting up a resulting trust in the petitioner, and claiming one-fourth of the proceeds of the sale of said lots. The facts upon which this claim is based do not seem to be disputed, and the real controversy is as to the proper legal conclusion to be deduced from the facts.

It seems that George A. Trenholm and the petitioner, F. H. Trenholm, were tenants in common of certain property in the city of Charleston, known as the Atlantic Wharves, the former being entitled to three undivided fourths and the latter to one undivided fourth, and that George A. Trenholm, who, for the purposes of this case, may be regarded as doing business under the name and style of George A. Trenholm & Son, (the son, Wm. L. Trenholm, being merely a salaried partner and having no further interest in the concern,) had the management and control of said property, receiving the income, and, at stated periods, dividing the same between himself and the petitioner in the proportions above stated.

There were three accounts on the books of George A. Trenholm & Son in which F. H. Trenholm was interested, viz.: (1) Atlantic Wharves account, in which he was interested to the extent of one-fourth; (2) account of F. H. Trenholm individually; (3) F. H. Trenholm security account. The books show that the portions of the credit balances on Atlantic Wharves account, to wit, one-fourth, which F. H. Trenholm was entitled to, were regularly transferred to the credit of the F. H. Trenholm security account, and " that at no time, from the beginning of this account, had there been any balance on the security account, or on the three accounts taken together, in favor of F. H. Trenholm, until July, 1877, when his account was closed by entry of a credit from distribution of profits of Atlantic Wharves." The books also show " that with the exception of February 10th, 1873, Atlantic Wharves were always in credit with George A. Trenholm & Son, when the payments were made for the lots, and that all payments on account of the wharves were made by checks of George A. Trenholm & Son."

On January 25th, 1873, George A. Trenholm purchased from George Gibbon one of the lots in question, paying one-third cash, and securing the balance by his own bond and mortgage, payable in two equal annual installments, and taking the titles in his own name, the papers bearing date January 25th, 1873. The cash payment was made on February 10th, 1873, by a check of George A. Trenholm & Son on the bank in favor of the purchaser, and the amount of said payment was, on the same day, charged to Atlantic Wharves account, and as the other installments became due they were paid in the same way, and the amounts thereof likewise charged to the same account. On May 30th, 1874, George A. Trenholm purchased the other lot in question from J. M. Shackleford, for cash, taking titles in his own name and paying the purchase-money by a check of George A. Trenholm & Son on the bank, the amount of which was also charged on the same day to Atlantic Wharves account. These lots, "from the time of purchase, were incorporated with or made a part of Atlantic Wharves, and the income from them was divided, in common with the other income from the wharves, between George A. Trenholm and F. H. Trenholm in the proportion of three-fourths to one-fourth."

The foregoing statement, condensed from the report of the master, to whom the case was referred, embraces substantially the material facts upon which he bases his conclusion. There is, however, an additional fact found in the testimony of Wm. L. Trenholm, which seems to have escaped the attention both of the master and the Circuit judge, and which appears to us to be of some significance. That witness says: "His father bought four pieces of property after the purchase of Atlantic Wharves, because they were on, or connected with, the wharves. These pieces were paid for out of the income of the wharves, and were incorporated with it. The two pieces now in hand were conveyed to him; the others were conveyed, three-fourths to George A. Trenholm and one-fourth to F. H. Trenholm, those being the proportions in which Atlantic Wharves were held. He knows of no reason for the distinction made, and supposes it was a mere inadvertence that the one-fourth was not subsequently conveyed to F. H. Trenholm."

Upon this state of facts the master reported in favor of the resulting trust, and the Circuit judge sustained the view taken by the master and rendered judgment establishing the trust in favor of the petitioner. From this judgment C. F. Hampton, as administrator of Frank Hampton, a judgment creditor of George A. Trenholm, appeals upon various grounds set out in the "Case," which we do not deem it necessary to repeat here. The sole question for our determination is whether the facts found in the record are sufficient to establish a resulting trust in favor of the petitioner. This is not a case in which we are called upon to review and reverse the findings of fact by the court below, for, as we have stated, there does not seem to be any dispute as to what the facts are, but the real controversy is, as to the legal conclusion to be drawn from undisputed facts.

The legal principles applicable to the question under consideration are so fully and clearly stated in the authorities cited by the counsel for appellant, that we are relieved from the necessity of doing more than simply quoting from some of the cases referred to. In the leading case of *Botsford* v. *Burr*, 2 *Johns. Ch.* at page 408, Chancellor Kent says: "If A. purchases an estate with his own money, and takes the deed in the name of B., a trust results to A. because he paid the money. The whole foundation of the trust is the payment of the money. *Willis* v. *Willis*, 2 *Atk.* 71. If, therefore, the party who sets up a resulting trust made no payment, he cannot be permitted to show by parol proof that the purchase was made for his benefit or on his account." Again he says: "Nor would a subsequent advance of money to the purchaser, after the purchase is thus complete and ended, alter the case. It might be the evidence of a new loan, or be the ground of some new agreement, but it would not attach by relation a trust to the original purchase; for the trust arises out of the circumstance that the money of the real, and not of the nominal, purchaser formed at the time the consideration of that purchase, and became converted into the land."

In *Willis* v. *Willis, supra,* Lord Hardwick says, in speaking of this class of resulting trusts: "Now trusts of this nature are when the legal interest is in another, but the purchase-money has

been paid by a third person ; this is a resulting trust for him who paid the money, but then he must clearly prove the payment." As is said by Kent, Ch., in *Boyd* v. *McLean*, 1 *Johns. Ch.* at page 590, in speaking of the admissibility of parol evidence to establish a resulting trust : " The cases uniformly show that the courts have been deeply impressed with the danger of this kind of proof as tending to perjury and the insecurity of paper titles, and they have required the payment by the *cestui què trust* to be clearly proved."

In 4 *Kent Com.* 305 (fifth edition) it is said, upon the authority of a number of cases there cited : " Where an estate is purchased in the name of A., and the consideration money is actually paid at the time by B., there is a resulting trust in favor of B., provided the payment of the money be clearly proved. The payment at the time is indispensable to the creation of the trust."

In *Olcott* v. *Bynum*, 17 *Wall*. 59, it is said : "Such a trust must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It cannot be created by after-advances or funds subsequently furnished. It does not arise upon subsequent payments under a contract by another to purchase."

In our own case of *Taylor* v. *Mayrant*, 4 *Desaus*. 516, it is said : " It appears from the authorities quoted that a resulting trust cannot be raised by construction. It must be grounded on plain proof of the application of the funds of the party for whom it is raised."

From these authorities, as well as others cited in appellant's brief, it seems to be well settled that, in order to establish a resulting trust of the kind here sought to be set up, which, as Chancellor Kent said, in *Boyd* v. *McLean, supra*, tends so much to impair the security of paper titles, it is necessary that the payment of the purchase-money, or some definite portion of it, by the *cestui que trust*, should be clearly proved ; that it must be an actual payment, and not a payment by construction merely ; and that the payment must be at the time of the purchase.

Testing this case by these principles, we think it clear that the petitioner has failed to establish any resulting trust in his favor.

So far from the payment of any portion of the purchase-money by the petitioner, at the time of the purchase, being clearly proved, we think the testimony shows that the entire purchase-money was paid by George A. Trenholm & Son, who, as we have said, for the purposes of this case, may be regarded as identical with George A. Trenholm. As to the lot bought from Gibbon, there can be no doubt. The title to George A. Trenholm was made on January 25th, 1873, and the purchase-money was not paid until February 10th, following. The moment the legal title became vested in George A. Trenholm, as it did so soon as the deed was executed, the property became subject to the lien of Hampton's judgment, unless there was then some existing equity in some one else superior to such lien.

The assumption of the master, based upon some alleged custom by which two or three weeks are allowed for the examination of titles, that the purchase was not fully consummated until February 10th, when the cash payment was made, is without evidence to sustain it, and we are bound to assume, until there is some evidence to the contrary, that the deed was delivered at its date and that the title then passed. So that, even if it had been proved beyond the possibility of a doubt that F. H. Trenholm furnished his father, ten days or more after the title thus became vested in George A. Trenholm, with the money with which the payment was made, no resulting trust in his favor would arise, because the money was not paid at the time of the purchase; for, as one of the cases expresses it, the trust must be coeval with the deed, and cannot arise from any subsequent transactions.

The other lot, bought from Shackleford, seems to have been paid for on the same day that the title was made, and, therefore, it becomes necessary to inquire whether any of the money belonged, at that time, to F. H. Trenholm. It is not pretended that he, in fact, actually furnished his father with any of the money used in paying for this lot, but the contention is, that inasmuch as the amount of the purchase-money was charged on the same day to the Atlantic Wharves account, in which F. H. Trenholm was interested to the extent of one-fourth, he, in effect, must be regarded as having, at least constructively, paid one-fourth of the purchase-money. But, as we have seen, there must

be an actual payment, and a mere constructive payment will not be sufficient to raise a resulting trust. Even were this not so, can it be properly said that any money belonging F. H. Trenholm was used in paying the purchase-money of this lot? The payment was made by a check of George A. Trenholm & Son, or, in effect, of George A. Trenholm himself, on the bank, and, therefore, when the purchaser got the money, he got the money of George A. Trenholm & Son, lying to their credit in bank, and the purchase-money was actually made, not with the money of F. H. Trenholm, but with the money of George A. Trenholm & Son, practically of George A. Trenholm.

When did it become the money of F. H. Trenholm? It belonged to George A. Trenholm when it was deposited in bank, and was his until it was drawn out on his check and paid to the vendor. It was not money belonging to the Atlantic Wharves, which, it must be remembered, was mere property, and not a corporation or other artificial person. It does not appear that there was any account kept in the bank in the name of Atlantic Wharves, upon which the check could be drawn, but it does appear that, even if there was such an account, the payment was not made by a check drawn on such account; but it was drawn on the account of George A. Trenholm & Son—in reality, George A. Trenholm—and the payment must, therefore, be regarded as made with his money. The fact that the amount for which the check was drawn was, on the same day, charged to Atlantic Wharves account, cannot have the effect of converting it into the money of that concern, even if such concern had been, not mere property, but a legal entity, having an artificial existence as a legal person. The most that can be said is that George A. Trenholm, being a tenant in common with F. H. Trenholm, of the property known as Atlantic Wharves, and in receipt of the entire income from that property, thereby became a debtor to F. H. Trenholm to the amount of his interest in such income, and liable to account to him for the same; and surely it cannot be said that, because a debtor buys property and pays for it before settling with his creditor, he has used some of the money of his creditor in paying for the property, and that thereby a trust results to the creditor.

As matter of fact, however, George A. Trenholm was not indebted to F. H. Trenholm at the time either of these lots was bought, for it is conceded that, at the time the first lot was bought, there was no balance to the credit even of the Atlantic Wharves account; and that at no time, until July, 1877, which was after the death of George A. Trenholm, would he have been indebted to F. H. Trenholm upon an adjustment of all three of the accounts in which F. H. Trenholm was interested. All that F. H. Trenholm could, at any time, have required of George A. Trenholm would have been an accounting for the income of Atlantic Wharves, and, of course, upon such accounting, George A. Trenholm would have been entitled to set off against any balance appearing to be due F. H. Trenholm on the Atlantic Wharves account, such balances as were due by F. H. Trenholm on the other two accounts.

The view presented by the master and concurred in by the Circuit judge, that George A. Trenholm must be regarded as having advanced for F. H. Trenholm his one-fourth of the purchase-money, cannot be sustained, especially when there is no testimony to support such a view, except the fact that the amount of the purchase-money was charged to Atlantic Wharves account; and the further fact that the lots in question were incorporated with that property. There is no evidence tending to show that there was any agreement between George A. Trenholm and F. H. Trenholm that such an advance should be made for the latter. On the contrary, if we look at the testimony of F. H. Trenholm, which is incorporated in the "Case," though ruled to be incompetent, such an idea is negatived, and the only understanding was that a one-fourth interest should be transferred to F. H. Trenholm "after the payments were made, * * * if it should appear to be advantageous before payments were completed."

It would seem from this, that so far from there being at the time even an understanding that the purchase was made on joint account, much less that the money of F. H. Trenholm should be used in paying one-fourth of the purchase-money, the true inference would be that it was to depend upon future contingencies, whether F. H. Trenholm was to have any interest in the

purchase. This view is very much strengthened by the testimony of William L. Trenholm, that although four pieces of property were purchased by George A. Trenholm and incorporated with Atlantic Wharves, the two lots in question were conveyed to George A. Trenholm, while the other two were conveyed—three-fourths to George A. Trenholm and one-fourth to F. H. Trenholm; and the witness was unable to give any reason for the distinction, except his supposition (which, of course, cannot be regarded as evidence,) that it was a mere inadvertence. We think the more reasonable supposition is that while a definite conclusion was reached as to the two lots conveyed to the parties jointly, there was no conclusion reached at the time as to the two lots now in question, but the disposition that was to be made of them was left to be determined by subsequent contingencies.

So that we think it clear that, so far from the money of F. H. Trenholm having been used in paying for the lots in question, there was not even any settled understanding reached at the time that F. H. Trenholm was to have any interest in the purchase, but that whether he should thereafter be admitted to such interest depended upon whether subsequent events should prove the purchase to be an advantageous one; and that George A. Trenholm, in charging the purchase-money to Atlantic Wharves account, only intended to afford the means of an easy settlement of the matter in case it should be subsequently determined that F. H. Trenholm was to have an interest in the purchase, he knowing that if it should be determined otherwise, the accounts between the parties could be easily rectified in the adjustment of other accounts.

Convinced, as we are, that the petitioner has failed to establish any resulting trust in his favor, the other questions discussed in the argument cannot arise, and need not be considered.

The judgment of this court is that the judgment of the Circuit Court be reversed.