## WALKER v. W., C. & A. RAILROAD COMPANY.

1. A contract having been made with a railroad corporation, after which the railroad was sold out and the purchasers formed a new corporation, but the contract was carried on without change, it was competent to prove, in action against the new company for breach of this contract, what the original agreement was, and then, that it had been acted upon by plaintiff and adopted by the defendant.

2. And there being some testimony upon these points, the trial judge properly refused a non-suit, and submitted to the jury the question whether the defendant had recognized and continued this contract with its predecessor.

3. If improper testimony is received, it is not ground for new trial where the jury are instructed to disregard it; for that, practically, is striking out such testimony from the case. .

4. A corporation is bound by proper contracts entered into by its agents. A regulation of the company forbidding its agents to make any contract is not binding upon a stranger who has no notice of this regulation.

5. A verbal contract that rests wholly on a contingency and may be terminated at any time, is not an agreement *not* to be performed within a year, and therefore void under the statute of frauds. This case distinguished from *Jones* v. *McMichael*, 12 *Rich.*, 176.

6. If a parol agreement is obnoxious to the statute of frauds, still one party cannot avail himself of this statute after accepting the full performance of the agreement by the other.

Before ALDRICH, J., Darlington, March, 1886.

This was an action by Thomas J. Walker against the Wilmington, Columbia & Augusta Railroad Company, commenced May 26, 1884. The case came to this court on the following exceptions:

1. Because his honor erred in receiving the testimony of R. M. Walker, a witness for the plaintiff, as to the terms of the alleged contract, there being no evidence of his authority to bind defendant by contract.

2. Because his honor erred in permitting the witness, R. M. Walker, to testify as to conversations and transactions with one James Anderson, when it did not appear in evidence that said Anderson had any connection with defendant, nor any authority to bind it.

3. Because his honor erred in receiving the testimony of plaintiff as to his transactions with his factors in reference to buying supplies, giving a note, and paying interest.

4. Because his honor refused to grant defendant's motion for a non-suit on the ground that no contract had been proved to have been made with plaintiff by the old or new Wilmington, Columbia & Augusta Railroad Company.

5. Because his honor erred in refusing defendant's motion for a non-suit, on the ground that it was bound by the alleged agreement in the year 1874 with the then Wilmington, Columbia &

Augusta Railroad Company, the evidence being that said company had been subsequently sold out, and there being no evidence of any new contract with defendant.

6. Because his honor erred in admitting testimony in reply tending to show the quantity of timber furnished under the alleged contract, when there was no evidence on the part of the defendant denying the quantity of timber as claimed by plaintiff.

7. Because his honor erred in refusing to strike out and withdraw from the consideration of the jury all testimony relating to the alleged contract with the Wilmington, Columbia & Augusta Railroad Company in the year 1874, or with any officer of that corporation, there being no evidence that defendant then had any corporate existence, and because, even if it had, that the defendant's charter and the acts of general assembly, prescribing the powers of its officers, confer the right to make contracts upon the president and board of directors only.

8. Because his honor erred in deciding that the alleged contract, being verbal, was not void by the statute of frauds.

*Mr. J. T. Barron*, for appellant, after stating the facts and citing the charter of the defendant company, contended that the contract was void under the statute of frauds. 12 *Rich.*, 182; 1 *Chit. Cont.*, 99, 100; 3 *Exch. Rep.*, 640.

*Mr. R. W. Boyd*, contra.

The new corporation were liable for their breaches of contracts made by the old corporation. *Dill. Mun. Corp.*, § 174. Certainly after adopting it. 11 *Otto*, 376; 1 *Redf. Rail.*, § 6. The contract made by the agent was binding on the corporation. 7 *Cranch*, 299; 8 *Wheat.*, 338; 5 *Id.*, 326; 10 *Rich.*, 101. The regulations of the company, not known to plaintiff, cannot affect him. 10 *Wall.*, 644. The agreement was not void under the statute of frauds. 3 *Strob.*, 198; 1 *McMull. Eq.*, 92; 1 *Rich.*, 202; 9 *Id.*, 105; 1 *S. C.*, 279. Besides, it has been fully performed by plaintiff. 5 *Rich.*, 16; 3 *S. C.*, 298.

February 7, 1887. The opinion of the court was delivered by MR. JUSTICE MCIVER. The plaintiff brings this action for

damages by reason of the breach of an alleged contract. The defence is a denial of the contract. The plaintiff offered testimony tending to show that in February, 1874, he entered into a verbal contract with one R. M. Walker, as road master on a portion of the line of the Wilmington, Columbia & Augusta Railroad, whereby he was to deliver on the line of said road cross-ties, trestle timber, and wood, to be inspected once a month, and, if received, to be paid for at such prices as the company was paying at the time to others for such articles, which contract was to continue until plaintiff was notified to stop delivering the articles mentioned; that under this contract plaintiff continued to furnish wood, cross-ties, and trestle timber until some time in the early part of the year 1883, without any notice from the company to stop, and that the defendant company refused to inspect and receive a large quantity of the said materials which had been delivered under said contract, whereby the plaintiff had sustained damage to a large amount. It appeared in evidence, that sometime in the year 1879 the railroad was sold, and early in 1880 a new corporation was formed by the purchasers, which assumed the same name as the old corporation, under the same corporate franchises and privileges became the owners of the same property, and continued to operate the same railroad. There was, also, testimony tending to show that after the formation of the new company, the said R. M. Walker continued as road master for about a year, and in his new capacity continued the arrangement previously made with the plaintiff.

At the close of plaintiff's testimony, a motion was made for a non-suit substantially upon the grounds: 1st. That under the charter of the company, the board of directors was charged with the general management of the affairs of the company, and there being no evidence that the board had ever delegated any of their powers to said Walker, he had no power to make any contract binding on the company. 2nd. That the alleged contract, having been made prior to the sale of the road and the organization of the new corporation, could not be binding upon it. The motion was refused, because, there being some evidence that the plaintiff had furnished materials under the contract, both before and after the reorganization of the company, which were received and used

by the company, questions of fact proper for the decision of a jury were raised.

The defendant offered testimony tending to show that James Anderson, by whose authority, as general superintendent of the old company, it was claimed the contract sued upon had been made, never had any connection with or authority over the affairs of the new company, and also offered in evidence the certificate under which the new corporation was formed, together with testimony to the effect that under the regulations of the new company all contracts, to be binding on the company, must be in writing signed by the president, and that no subordinate officer had any authority to make any contract for the company. At the close of all the testimony, the defendant moved to strike out all of the testimony adduced by the plaintiff as to any contract with the old company, and all testimony as to any contract with Anderson, or by his authority, upon two grounds : 1st, because the new company is not bound by any contract made with the old corporation; 2nd, that no authority has been shown in Anderson, the general superintendent, or Walker, the road master, to make any such contract. The motion was refused, the court saying that the jury would be instructed that the questions for their decision were: 1st. Were the articles furnished by plaintiff under the original contract with the road master of the old corporation? 2nd. Did the road master of the new company recognize that contract and direct a continuance of it? The defendant then renewed the motion for non-suit, upon the ground that the contract sued upon, not being in writing, is null and void under the statute of frauds, which was refused.

The Circuit Judge then charged the jury, substantially, as follows : that the questions for them to determine were whether the plaintiff furnished the material mentioned under the contract with R. M. Walker, which was to continue until he was ordered to stop, and did Walker, after he became road master of the new company, continue that contract; did Freeland, the person who succeeded Walker as road master of the new company, recognize that contract and direct the furnishing of the material? If the jury found that the plaintiff continued to furnish the material under the contract with R. M. Walker, as road master, and not

under the general rule of the company, only to pay for such material as was inspected and received, then he was entitled to recover for all the good material he delivered. As to the rules and regulations of the company in respect to the manner of making contracts, the jury were instructed that such rules were made for the government of the officers and agents of the company, and that third persons could not be affected by them unless brought to their especial attention ; that if it was the custom of the officers and agents of the company to make contracts for material, and the company received and paid for it, then that was a ratification of such contracts, and the company would be bound by such contracts, even though not made in accordance with its rules and regulations. As to the damages, the jury were instructed that, "In estimating the damages, if you conclude that the defendant, the railroad company, has broken the contract, you will consider the actual damage of the plaintiff by the loss of material. Remote damages, such as loss of credit and the charge of interest for money advanced by factors and loss of crop, are too remote and cannot be considered."

The jury having found for the plaintiff, and judgment having been entered on the verdict, defendant appeals upon the several grounds set out in the record.

As to the first and second grounds of appeal, which assail the competency of the testimony of R. M. Walker as to the making of the original contract with the plaintiff, and as to his conversations and transactions with Anderson, the superintendent of the old company, it is quite clear that this testimony was adduced, not as evidence of any contract with the new company, for which it would not, by itself, have been competent, but simply to show the origin of the contract which was afterwards made with the new company, for which purpose it was competent. The new company, having succeeded to all the rights and privileges of the old company, might or might not have continued a pre-existing contract made with the plaintiff for the supply of materials necessary to its operations, and the allegation on the part of the plaintiff, to prove which he had offered testimony, being that his contract with the old company had been recognized and continued by the new corporation, it was, of course, competent to prove

what was the old contract which had thus been recognized and continued ; and the testimony as to the conversation and transaction between the witness, Walker, and Anderson, the general superintendent of the old company, was only introduced to meet the position taken by defendant's counsel, that Walker, as road master of the old corporation, had no authority, under the charter of such corporation, to make a contract, by showing that the old company had, through its general superintendent, not only expressly sanctioned and recognized such contract, but had acted under it. Of course, Anderson never having had any connection with the new company, could not bind it by any contract which he might make ; but if the new company, after succeeding to the rights and privileges of the old, saw fit, either expressly or impliedly, to recognize and adopt or continue a contract made with its predecessor, by or under the authority of Anderson, as superintendent of such predecessor, it surely was competent for the person (R. M. Walker), through whose immediate agency the original contract had been made, to prove its nature and terms.

The third ground of appeal is disposed of by the explicit terms in which the jury were instructed as to the measure of damages, the language of which instruction is quoted above. So that, even assuming that the testimony as to the plaintiff's transactions with his factor, and his loss of interest, &c., by the failure of the railroad company to comply with the alleged contract, was improperly received, yet it was practically stricken out and the jury directed to disregard it, as they were expressly instructed that they could not give any damages for the loss of credit, the charge of interest on advances and loss of crop, but must confine themselves to "the actual damage of the plaintiff by the loss of material."

The fourth and fifth grounds complain of error in refusing defendant's motion for non-suit, on the ground that there was no evidence of any contract binding on the defendant. It is a mistake to suppose that the Circuit Judge held that the new company was bound by the contract with the old corporation, as seems to be implied by the language of the fifth ground. On the contrary, the Circuit Judge, finding that there was some evidence tending to show that the new company had, by its road master, Walker,

and his successor, Freeland, recognized and continued the original contract made with the old company, very properly left that question to the jury.

It is urged, however, by the appellant, that after it had been made to appear that, under the regulations of the new company, no contract binding upon it could be made unless it was in writing, signed by the president, all the testimony relating to the verbal contract made with the plaintiff by the road master, Walker, should have been stricken out, leaving the case without any testimony whatever as to any contract binding on the new company. Assuming that, under the rules and regulations of the new company, no subordinate officer or agent of the company has any authority to make any contract which will bind the company, but that such contract can only be made by writing, signed by the president (though it is difficult to conceive how such a regulation can be practically carried out, when the multiform operations of such a company are considered, and the numerous occasions in which it becomes necessary for subordinate officers and agents to act for the company), yet we agree with the Circuit Judge, that such rules and regulations are intended for the government of the officers and agents of the company, and cannot be allowed to affect third persons unless brought to their attention. It is true that in earlier days it was held that a corporation, under the common law, could only bind itself by its corporate seal, but this doctrine has long since been exploded, and now it is well settled that a corporation may contract and be contracted with through an agent whose authority may be implied from facts and circumstances showing recognition or ratification by the corporation. Indeed, it seems that the same presumptions are applicable, in this respect, to corporations as to natural persons. See *Ang. &amp; Ames Corp.*, ch. IX., §§ 283, 284; *Bank* v. *Bivingsville Manufacturing Company*, 10 *Rich.*, 95, and other cases cited in respondent's "Brief."

In this case there was testimony tending to show that R. M. Walker, the road master, entered into a contract with the plaintiff to furnish just such material as it was necessary for him to have for the proper performance of his duties; that such contract was sanctioned by the general superintendent of the old corporation;

that when the railroad was sold out and the new company (the present defendant) was formed, the same road master was continued in office for about a year, and that he continued the contract with the plaintiff, who does not appear to have had any notice of any new rule or regulation forbidding such road master to make such a contract, or to continue the former one ; that the plaintiff continued to furnish material under the old contract as he understood, and in the absence of notice to the contrary as he had a right to understand, some of which was used by the new company ; and under this testimony, clearly competent for the purpose, we think it was properly left to the jury to determine whether the contract with the old company had been recognized by the new company.

What has already been said, sufficiently disposes of the seventh ground of appeal. The point raised by the sixth ground was very properly not pressed at the hearing, as it is clear that it could not be maintained.

It only remains to consider the question raised by the eighth ground, which is whether the contract is void under the statute of frauds, as being an agreement "that is not to be performed within the space of one year from the making thereof." The proper construction of these words just quoted from the statute has been the subject of consideration in several cases in this State. In *Thompson* v. *Gordon* (3 *Strob.*, 199), they are declared to mean "an agreement *not* to be performed in the space of a year, and expressly so stipulated. A contingency is not within the statute; it must appear, *within the agreement*, that it is not to be performed until after the year, to make a note in writing necessary." So it is said by Johnson, Ch., to be well settled, "that when the agreement is to be performed on a contingency which may or may not happen within the year, a note in writing is not necessary." *Gadsden* v. *Lance, McMull. Eq.*, 92. This seems to be the rule in New York, also, for in *Moore* v. *Fox* (10 *Johns.*, 245), it is said : "To bring the case within the statute of frauds, there must be an express and specific agreement *not* to be performed within the space of a year ; and if the thing *may* be performed within the year, it is not within the act." The same doctrine is found in the case of *Fenton* v. *Emblers* (3 *Burr.*, 1278),

where it is said : "The statute of frauds plainly means an agreement *not* to be performed within the space of a year, and *expressly* and *specifically* so agreed. A contingency is not within it, nor any case that depends upon contingency."

The case of *Jones* v. *McMichael* (12 *Rich.*, 176), relied on by the appellant, does not qualify this doctrine, except, perhaps, in so far as the requirement that it must appear within the agreement that it is not to be performed within a year. In that case, A and B made a verbal agreement, whereby A was to erect a steam saw mill on the lands of B, and carry on the same at his own cost, while B was to deliver at the mill, at his own cost, all the timber growing on a certain tract of land belonging to B, and they were to divide the profits between them. It did not appear that any time was specified within which the contract was to be performed. The court said: "The agreement contains no express reference to time ; but under it the business was carried on for more than a year, and not half the timber was sawed or even felled. If it appeared, as we assume it did, from the quantity of the timber and the capacity of the mill, that the parties, in their agreement, contemplated the lapse of a longer period than one year before the enterprise could be fully executed, then the agreement was obnoxious to that portion of the 4th section of the statute which speaks of an agreement that is not to be performed within the space of one year from the making thereof."

It will be observed that there was no element of contingency in that contract. On the contrary, by its express terms B was bound to deliver all the timber from the tract of land specified, and if the fact was, as the court assumed it to be, that the amount of timber on that tract of land was more than could be delivered and sawed within a year, then the parties must necessarily be regarded as contemplating an agreement which was not intended to be performed, and could not be performed, within a year. So, that while that case may be regarded as relaxing so much of the rule as requires that it shall expressly appear in the agreement itself that the parties contemplated a contract which was not to be performed within a year, but that such a purpose may be inferred from other circumstances, to wit, from the circumstance, in that case, that, looking to the amount of timber on the land

and the capacity of the mill, it was apparent that the contract could not have been performed within a year, and, therefore, that the parties must be regarded as contemplating a performance after the expiration of the year, that case does not, in any other respect, infringe upon what we have seen to be the well settled construction of the act.

Testing the contract in this case by the rule as established by the foregoing cases, we think it clear that it does not come within the provisions of the statute. There was not only no specified time fixed for the performance of the contract, but it manifestly rested wholly on a contingency. The railroad company had authority to terminate it whenever it pleased by simply notifying the plaintiff to stop delivering the material. It depended wholly upon the will of the company whether the contract should terminate at the end of a month or two months or at the end of a year. Such a contract surely cannot be regarded as an agreement not to be performed within a year from the making thereof.

But even if the contract, when originally made, was obnoxious to the statute, yet, after it had been fully performed by the plaintiff, the defendant could not then avail itself of the statute. *Bates* v. *Moore*, 2 *Bail.*, 614; *Gee* v. *Hicks*, *Rich. Eq. Cas.*, 17; *Carter* v. *Brown*, 3 *S. C.*, 298. If, as we must conclude after the verdict of the jury, the plaintiff continued to furnish material to the railroad company under the original agreement, which was afterwards recognized and continued by the road masters of the defendant company, without any notice to stop, then the plaintiff, having fully performed his part of the contract, is entitled to recover, under the authority of the cases last cited, even if the contract, when originally made, could be regarded as within the statute.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.