8124

SURASKY v. WEINTRAUB.

RESULTING TRUST—EQUITABLE MORTGAGE.—Where several persons purchase a tract of land, take a joint deed and give a joint mortgage, and one of them not having the money to pay his part of the cash payment, agrees in parol with the others that if they would pay his part they should hold his interest until he paid them, a resulting trust does not arise, nor have those advancing the money an equitable mortgage on his interest in the land.

Before MEMMINGER, J., Aiken, June, 1911. Modified.

Action by Hyman Charles Surasky *et al.* against Charles Weintraub *et al.* on several causes of action, the first and second of which are:

"For a first cause of action.

"The complaint of the above named plaintiffs respectfully shows unto this Court:

1. "That on or about the 6th day of July, 1908, the plaintiffs, Hyman Charles Surasky, Solomon Surasky, Samuel Surasky and Benedict Morris Surasky, and the defendant, Charles Weintraub, entered into an agreement, wherein, among other things, they covenanted and agreed that they would jointly purchase the tract of land hereinafter described from M. M. Coward and T. F. Coward, each party then and there stipulating and promising to pay on the purchase of the same the one-fifth part of the purchase price of said premises as his individual share of said indebtedness, said deed to be taken in the names of all the parties under the agreement hereinafter named.

2. "That in pursuance of said agreement, the aforesaid partners purchased the tract of land hereinafter described from T. F. and M. M. Coward at and for the sum of five thousand ($5,000.00) dollars, the said purchase money to be secured by a mortgage of the premises, and to be paid in the following manner, that is to say, the sum of five hundred ($500.00) dollars at the time of the purchase, and five hundred ($500.00) dollars annually thereafter from date of purchase, with interest thereon at the rate of seven per cent. per annum, and all interest payable annually. That thereupon a deed was executed and delivered unto the aforesaid parties, conveying unto them in fee simple, 'All that certain piece, parcel or tract of land, situate, lying and being in the county of Aiken, State aforesaid, containing twenty-two hundred (2,200) acres, more or less, known as the Phelps Ranch property, and consisting of six small tracts, all of which are more specifically described in that certain mortgage of Charles Weintraub and Morris Lattaman to M. M. and T. F. Coward, dated October 5, 1905, recorded in the office of the clerk of court for Aiken county in Mortgage Book No. 3, pages 167 to 175 inclusive, said deed being recorded in the office of the clerk of court for Aiken county on the 20th day of July, 1908, in Deed Book L No. 1, page 218.'

3. "That previous to and at the time of said sale, the defendant, Charles Weintraub, informed and advised his cotenants that he had no funds whatever with which to pay his portion of the purchase price of said premises, or any part thereof, but at the same time promised and agreed that if they would advance his portion of the purchase price, that he would pay the same whenever it became due according to the terms of the agreement entered into with the grantors; and, in order to secure his cotenants, agreed that while the legal title to the one-fifth part of said premises was to be taken in his name, yet, that the same should be their property until he fully paid his part of the purchase price, and further, that he would hold the same for the benefit and protection of said parties in consideration of their advancing his portion of the purchase price aforesaid.

4. "That the said Hyman Charles Surasky, Solomon Surasky, Samuel Surasky and Benedict Morris Surasky, relying upon these representations and agreement, at the time of the purchase of said property and the delivery of the deed therefor, then and there paid unto T. F. and M. M. Coward the entire portion of the purchase money due on said land by the defendant, Charles Weintraub, on his one-fifth interest in said land, and thereupon, the deed to said premises was executed and delivered conveying the aforesaid tract of land unto the aforesaid parties as joint tenants, each owning the one-fifth part thereof as aforesaid.

5. "The plaintiffs further allege that in order to pay in cash the full price of said premises unto T. F. and M. M. Coward, they paid in cash to said parties the sum of five hundred ($500.00) dollars, and executed and delivered a certain bond, secured by a mortgage of the premises, for the balance of the purchase money, said lien being upon the following conditions, to wit: The sum of forty-five hundred ($4,500.00) dollars, with interest thereon from the 13th day of July, 1908, at the rate of seven per cent. per

annum, and falling due as follows, to wit, five hundred ($500.00) dollars cash on delivery of the deed, and five hundred ($500.00) dollars annually thereafter on the first day of January of each successive year, together with whatever interest might be due until said debt is paid in full; and that in order to secure the same, said parties executed and delivered their certain mortgage, whereby they conveyed by way of mortgage the above described property unto T. F. and M. M. Coward. And they further allege that no part of said debt has been paid by the defendant, Charles Weintraub, but to the contrary, these plaintiffs have from time to time paid the entire portion of the debt due by the defendant, Charles Weintraub, according to their aforesaid agreement, and that there is now due them for moneys thus advanced, together with principal of his debt, the sum of two hundred ninety-eight 11-100 ($298.11) dollars.

·6. "The plaintiffs further allege that by reason of the aforesaid facts and circumstances, that although the legal title to the aforesaid one-fifth interest in said premises was taken in the name of Charles Weintraub, defendant, a trust results in favor of these plaintiffs for the full amount, and should be so declared by this Honorable Court, and the defendant, Charles Weintraub, directed and required to convey by deed in fee simple his one-fifth part therein unto these plaintiffs.

7. "That for valuable consideration, Benedict Morris Surasky transferred and assigned all his right, title and interest in the aforesaid premises unto the plaintiffs, Hyman Charles Surasky, Solomon Surasky and Samuel Surasky, who are now the sole owners thereof.

8. "That there appears on record in the office of the clerk of court, a mortgage executed by Hyman Charles Surasky, Solomon Surasky, Samuel Surasky, Benedict Morris Surasky and Charles Weintraub unto M. M. and T. F. Coward, said mortgage constituting a lien on the premises

hereinabove described, and that they are therefore necessary parties to this action.

"For a second cause of action.

1. "That on or about the 6th day of July, 1908, Hyman Charles Surasky, Solomon Surasky, Samuel Surasky, and the defendant, Charles Weintraub, entered into an agreement whereby the said Charles Weintraub was employed as general manager at a salary of twenty-five ($25.00) dollars per month, his duties being to control in general the cultivation and harvesting of all crops on the premises mentioned in the first cause of action, and to keep the place in good order, machinery in repair, and to oversee labor and perform all other duties as may be necessary to properly cultivate said land during the year 1908, and ending on the 31st day of December, 1908; and they further allege that the other parties to said agreement were to advance the defendant, Charles Weintraub, all money that may be needed to pay for labor, material, etc., in raising, cultivating and harvesting the crop, it being agreed that the said expenses were to be shared equally between the parties, that is, each to pay the one-fifth (1-5) part thereof, and all profits, if any, to be divided equally, share and share alike between the aforesaid parties.

2. "That pursuant to said agreement, the plaintiffs faithfully performed their contract in full, and during the year 1908, according to their agreement, advanced the sum of one thousand one hundred and thirty 82-100 ($1,130.82) dollars, a portion thereof being due by the defendant, Charles Weintraub, as his one-fifth (1-5) part.

3. "The plaintiffs further allege that no part of said indebtedness has been paid by the defendant, except the sum of one hundred and twenty-five ($125.00) dollars, paid thereon by direction of the defendant that his salary of $25.00 be credited thereon, and that there is still due and remaining unpaid the sum of one hundred and one and 15-100 ($101.15) dollars."

The defendant appeals on the following exceptions:

Second: "The presiding Judge erred in not holding that if the plaintiffs did pay the $100.00 for the first installment due on defendant, Weintraub's, share in the land it was advanced by them to him as a loan, for the reason the evidence, overwhelmingly shows that if plaintiffs did pay his part of the first installment on the land it was advanced by them to him as a loan, as shown by the following testimony.

"Samuel Surasky testified: He (Weintraub) agreed to give us his one-fifth interest in the place for us to pay out the money until he could pay it back. Did you or not agree to let the title go in his name in that same agreement? At first we agreed to do it and we to hold it for the debt until he paid for it. It was to protect you from losing what money you advanced for his share? We agreed we should keep that for the money we paid the Cowards until he paid us back. When was he to pay you back what you advanced for him? In January, 1909, his part of the interest then due. In January, 1910? No, he said in 1909 when he came to the payment he said he agreed for us to keep it, he didn't have any money, but we should carry it on. When did he say he would pay you back what you advanced to the Cowards for him? He said then he would try to pay it in January, 1910, but he didn't.

"Hyman Surasky testified: 'Why was the title made out to him as well as to you all? Well, I believe that agreement was, we knew that he had money owing to him, and we fully trusted him, that he would pay on January 1, 1909, his part.'

Third: "The presiding Judge erred in holding as a matter of fact that the plaintiffs never intended to absolutely part with the title or beneficial interest in the property, but that they intended to treat Weintraub as a purchaser holding bond for title, for the reason that such finding is not supported by the evidence which shows overwhelmingly

that plaintiffs never did have the title to defendant, Wein-
traub's, one-fifth interest in the land, but that it was and
still is in him as a cotenant with them.

Fourth: "The presiding Judge erred in holding and
declaring a resulting trust in favor of the plaintiffs in
defendant's entire one-fifth interest in the whole property,
and in declaring said one-fifth interest in the land is the
property of plaintiffs for the following reasons:

"(a) Because the proof shows overwhelmingly that if
there was any trust at all it was a verbal express trust,
clearly and fully established by the patrol testimony in the
alleged verbal agreement made at the time of the purchase,
and said expressed trust not being in writing it should have
been declared illegal and void as urged before the Court
by this defendant.

"(b) Because the proof overwhelmingly shows that if
the plaintiffs paid any money on the land for defendant at
the time of the purchase it was advanced by them as a loan
and therefore no resulting trust could be declared.

"(c) Because if any resulting trust could be declared
at all it could only be declared for the aliquot part or to the
extent or *pro tanto* amount of the purchase money advanced
for defendant at the time of the purchase, which plain-
tiffs claim was only $100.00; and which would amount to
but one-tenth of defendant's one-fifth interest in the prop-
erty or to one-fiftieth part of the whole; furthermore, the
proof shows, and it is admitted, that only a small part of
the purchase money of the land, to wit, $500.00, was paid
to the Cowards at the time of the purchase, and the
balance was secured by a mortgage covering the premises
given by the defendant as well as the plaintiffs."

*Mr. J. B. Salley,* for appellant, cites: *If any trust was
shown it was a verbal express trust:* Code 1902, secs. 2583,
2562; 78 S. C. 494; 57 S. C. 162; 52 S. C. 393; 56 S. C.
83. *A resulting trust cannot arise out of a loan:* 15 Ency.

1149-53; 78 S. C. 497; 32 S. C. 595; 52 S. C. 391; 19 S. C. 134; 6 S. C. 102; 21 S. C. 491; 23 S. C. 254; 2 A. & E. En. Cas., note 667-9. *Plaintiffs do not allege an equitable mortgage:* 55 S. C. 524-68; 50 S. C. 180; 2 Cyc. 670, 672, 674; 3 Cyc. 262-3; 3 Cyc. 242-3; 16 Cyc. 483-5.

*Messrs. Croft & Croft,* contra, cite: *Resulting trust may be shown by parol:* 52 S. C. 391; 59 Mass. 148; 10 Ency. 27, note 10; 4 J. J. Marsh. 594; 59 S. C. 283; 31 S. C. 60; 78 S. C. 496; 1 Wis. 587.

March 6, 1912. The first opinion was delivered by

MR. CHIEF JUSTICE GARY. The complaint sets forth five causes of action; the first seeks to have a resulting trust declared in certain lands, and the second is for an accounting. The others are not involved in this appeal.

His Honor, the Circuit Judge, who heard the case, ruled that there was a resulting trust in favor of the plaintiffs, under the first cause of action; but, that under the second cause of action, nothing was due the plaintiffs, for the reason that they applied the salary of the defendant, Weintraub, for superintending the farming operations, in payment of his proportionate part of the expenses.

The defendant, Weintraub, appealed upon exceptions, which will be reported, except the first which was withdrawn.

The main question in the case is, whether his Honor, the Circuit Judge, erred in ruling, that there was a resulting trust in favor of the plaintiffs.

In the first place, the facts alleged in the first and second causes of action (which will be reported) show, that the money advanced by the plaintiffs to Weintraub was a loan, and that there was error in declaring a resulting trust.

34—90

In the second place, the testimony of the plaintiff themselves, is to the same effect.

The plaintiff, Samuel Surasky, testified as follows: "When that day came and you purchased this land, and $500 was due, what was said about Mr. Charles Weintraub paying his part of the $500, on the day it was purchased? He agreed to give us his one-fifth interest in the place, for us to pay out the money until he could pay it back. * * * Did you or did you not agree to let the title go in his name, in that same agreement? At first we agreed to do it, and we had to hold it for the debt, until he paid for it. * * * At the time the place was purchased, when he agreed to let you have his one-fifth interest, until he paid you back, was any time agreed on, when he should pay you for the money advanced? Yes, sir; he agreed we shall pay his one-fifth, and he will pay back in January, 1909."

On cross-examination he testified: "As I understand you, that agreement was, that the title should be made out to all five of you, but with the understanding that his share or one-fifth interest, should stand good for whatever moneys you advanced to pay his part? It was no understanding; he agreed that we shall keep it, until he pays his one-fifth part. It was to protect you, from losing what money you advanced for his share? We agreed we should keep that, for the money we paid the Cowards, until he paid us back. And the title was made to him and all of you? Yes, the five. * * * You say he was to pay you back that first payment, on the following January, 1909? Yes, sir. When was he to pay you back, what you advanced for him? In January, 1909, his part of the interest then due. In January, 1910? No, he said in 1909, when he came to the payment, he said he agreed for us to keep it, he didn't have any money, but we should carry it on. When did he say he would pay you back, what you advanced to the Cowards, his part of the interest then due?

He said he would try to pay it in January, 1910, but he did not. In January, 1910, when you made this payment to the Cowards, did you talk with him, about advancing his share? We wrote to him, to come at once. Did he come? No, sir. You advanced the installment in 1910, without his coming or without his writing about it? Yes, sir."

Hyman Surasky testified as follows: "What agreement, if any, did you make with Mr. Weintraub, about furnishing his money? Before we bought the place, we asked him if he had his money to pay his share. He said he had some debts owing him, and some stock of goods, but he had none then, but would have it by January 1st, but could not get it now, but he agreed to let us pay Mr. Coward his fifth, and let us hold his share until he paid."

On cross-examination he testified: "As I understand Mr. Weintraub agreed, that his one-fifth interest in the property should be as security for the money you advanced to pay his share? He said it should belong to us, until he paid it. Why was title made out to him, as well as to you all? Well, I believe that the agreement was, we knew that he had money owing to him, and we fully trusted him, that he would pay on January 1, 1909, his part. How much money in goods did he say he had owing to him, with which he could pay you back, on January 1st, his part? Between $200 and $300."

A resulting trust is not dependent upon the agreement of parties, but arises by operation of law whenever the money of one person is used in the purchase of land, and the title is made to another. He who is vested with the legal title, becomes a trustee, and cannot hold the land against the person, whose money was used in paying for the land.

The doctrine of resulting trusts has no application, when there is an express agreement between the parties; and parol evidence is admissible for the purpose of showing

that a deed though absolute on its face, was intended as security for a loan. *Brownlee* v. *Martin,* 21 S. C. 392.

The trust must be coequal with the deed, and cannot arise from any subsequent transactions. *Ex parte Trenholm,* 19 S. C. 126.

Therefore, in determining whether there was a resulting trust in this case, we must look to the *status* of the parties, at the time the deed was executed. Weintraub joined in executing the bond and mortgage to the Cowards, for the purchase money of the land, and thereby incurred an equal liability with the other mortgagors; and, to declare that there was a resulting trust at that time, would take from him his share of the land, but leave him liable to the Cowards, for his proportion of the unpaid purchase money. It is true, the Cowards in their answer state, that "they are perfectly willing, and hereby waive all and any rights to any judgment, that they might be entitled to, against the defendant, Charles Weintraub, by way of a deficiency;" but subsequent transactions cannot give rise to a resulting trust.

The testimony of the plaintiffs shows, that they do not contend that Weintraub did not have an equal interest with each of them in the land, when the deed and mortgage were executed, but that by failing to pay the amount advanced by them for him, he thereby forfeited his interest in the land.

As the failure to pay, took place after the deed was executed, it could not have the effect of raising a resulting trust.

The fact that the salary of Weintraub, was applied by the plaintiffs to the expense account, is inconsistent with the theory, that there was a resulting trust, and tends to show that he was recognized after the said agreement, as one of the owners of the land, and jointly liable for the purchase money. The agreement to pay him for his services, was a part of the contract hereinbefore mentioned,

made by the plaintiffs and said defendant, on the 6th of July, 1908.

The following principles are applicable to this case: "The rule is well settled, that where one person lends money to another, to be used by the borrower, in the purchase of land, no resulting trust arises in favor of the lender, in the land purchased by the borrower, title to which is taken in the latter's name. And this has been held true, though at the time of the loan, it was agreed between the borrower and the lender, that the interest in the land to be purchased by the borrower, should vest in the lender, to the extent of his loans." 15 Enc. of Law 1149-50.

The principle just stated applies with greater force when, as in this case, the borrower and the lender are both liable under a mortgage executed by them, in favor of the vendor to secure payment of the purchase money.

A resulting trust may be established by parol evidence, but when the proposed testimony shows an agreement beyond what the law would imply, it involves an express agreement, inconsistent with a resulting trust. *Bell* v. *Edwards,* 78 S. C. 490, 59 S. E. 535.

"A resulting trust arises in favor of one who pays the purchase money of an estate and takes title in the name of another, because of the presumption, that he who pays for a thing, intends a beneficial interest therein for himself; but this presumption cannot arise when a contrary intent appears, since it is based on the absence of evidence of such contrary intent." *Manning* v. *Screvens,* 56 S. C. 83, 34 S. E. 22.

"Such a trust must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It cannot be made by after advances, or funds subsequently furnished. It does not arise upon subsequent payments, under a contract by another to purchase." *Olcott* v. *Bynum,* 17 Wall. 59.

The exceptions raising this question are sustained. Although there was not a resulting trust, and the money advanced, must be regarded in the nature of a loan, secured by the interest of Weintraub in the land, it does not follow that the plaintiffs are not entitled to relief. The plaintiffs have an equitable mortgage on the interest of Weintraub in the land, and there is no reason why, under the authority of *Philips* v. *Anthony,* 47 S. C. 46, 25 S. E. 294, they may not in this action apply for such an order, as will subject the interest of Weintraub, to the payment of the amount due them by him.

Conceding that the agreement between Weintraub and the Suraskys, whereby the interest of Weintraub in the land, should stand as security for the amount advanced by them, was obnoxious to the statute of frauds, nevertheless, when the Suraskys performed their part of the agreement, by advancing the money, Weintraub was estopped from relying upon such statute.

In the case of *Walker* v. *Ry.,* 26 S. C. 80, 1 S. E. 366, it was held, that if a parol agreement, was obnoxious to the statute of frauds, still one party cannot avail himself of this statute after full performance of the agreement by the other. The Court therein used this language: "But even if the contract when originally made was obnoxious to the statute, yet after it had been fully performed by the plaintiff, the defendant could not then avail itself of the statute." Citing *Bailey* v. *Moore,* 2 Bail. 214; *Gee* v. *Hicks,* Rich. Eq. Cas. 17; *Carter* v. *Brown,* 3 S. C. 298, to which may be added *Brownlee* v. *Martin,* 21 S. C. 392, and *Turnipseed* v. *Sirrine,* 57 S. C. 559, 35 S. E. 157.

For the foregoing reasons I dissent from so much of the opinion of Mr. Justice Woods, as is inconsistent with the views herein expressed.

Mr. Justice Woods. I concur in the conclusion that there was no resulting trust in favor of the plaintiffs, but

I dissent from the last proposition laid down in the opinion of the Chief Justice that the plaintiffs have an equitable mortgage on the interest of the defendant, Weintraub, in the land. An equitable mortgage is not created by the mere advance of money accompanied by a parol agreement of the debtor that the creditor shall have a mortgage. There was no part performance nor was there any promise to make a mortgage in the future from Weintraub to the Suraskys. Upon the purchase of the land by Weintraub and the Suraskys together and the making of the title to all of them, Weintraub took possession for all the parties including himself, under the right which he had in common with the Suraskys to enter and hold the land as a tenant in common. A mere promise by Weintraub to the Suraskys to pay his portion of the purchase money advanced by them, and his agreement that they should have a lien therefor cannot create an equitable mortgage as long as the statute of frauds remains the law of the land. None of the cases cited by the Chief Justice sustain the position that a lien on land can be created in favor of a creditor advancing money, by a mere parol agreement from the debtor that the debt shall be a lien, and I do not think any authority for such a proposition can be found. The subject has been discussed at length in the opinion of the case of *Folk* v. *Brooks,* soon to be filed, and I refer to that opinion for a fuller statement of the reasons for my conclusions on this point. It follows that the plaintiffs are entitled to recover an ordinary money judgment against Weintraub for the sum of one hundred dollars loaned to him to purchase his share of the land with interest thereon from the date of the loan. They will also be entitled to subrogation to the rights of the Cowards as mortgagees to the extent of any sum they may pay on the portion of the mortgage debt owing by Weintraub.

The judgment of this Court is that the judgment of the Circuit Court be modified to conform to the conclusions herein expressed.

MESSRS. JUSTICES HYDRICK, WATTS *and* FRASER *concur.*