Peckham, J.
 

 The appellants claim that the trial court improperly excluded the evidence of the witnesses taken by deposition. A great deal of such evidence consisted of proof offered to show the opinion or the intention of the board of managers or the trustees in obtaining or executing the modified agreement. There was some evidence offered to show that the railroad company defendant was insolvent and unable to cony out the provisions of the original lease when the modified agreement was executed. That agreement recites that it is for the interest of the certificate holders that it should be executed. The opinions or intentions of parties who execute a written paper free from ambiguity cannot be given in evidence to alter the signification of the plain language of the paper. Nor can surrounding facts be proved for such purpose. If the language be plain and there be no ambiguiiy, it must be interpreted in accordance with its terms. It may be assumed that the railroad company defendant was insolvent at the time of the execution of this modified agreement, and that it was unable to continue the payment of the rent provided for in the original lease, yet that fact has no effect in altering the interpretation which would otherwise be given to the language of the modified agreement. That .language is plain and unambiguous. We think no error was committed by the court in excluding the depositions.
 

 The main question in the case is in regard to the effect to be given to the second agreement already referred to. The origi
 
 *304
 
 nal agreement or lease was, as all admit, a perfectly valid instrument, binding upon all parties to it. The failure of the railroad company to perform its conditions left the lessors at liberty to enforce them by a resort to legal measures, if so disposed.
 

 The question is, to what extent and in whose behalf has this valid agreement been modified, if at all ? On reading the agreement which is set up as modifying the original lease, it is seen that the plaintiffs assumed as trustees to execute it “ on behalf of such of the holders of said certificates issued by them or their predecessors in the said trust, as have already authorized, or shall hereafter authorize, the same, and have caused, or shall cause, such authorization to be endorsed upon the respective certificates held by them.” This language seems quite plain, and to be free from any doubt as to its meaning. In behalf of those holders of ■certificates who have authorized, or may authorize it, the trustees .assume to change the burdens of the first lease, and to qualify and lessen the same as against the railroad company. As to those holders who do not so assent, the burden is to remain as it was at first provided, because the only change provided for is in behalf of those who assent to it. It is difficult by the use of any form of expression to render this meaning clearer than the paper itself, and if there be no rule of law which forbids it, it seems equally a matter of course to give such meaning its full scope in practice. But the defendants say that even assuming there may be some sort of liability on their part, the plaintiffs cannot enforce it, because as to the plaintiffs there is no cause of action in their favor after the execution by them of the modification of the lease. That, however, depends upon the extent and effect of such modification. I see no obstacle which should prevent their suing upon the original lease in favor of such persons as to whom it has not been modified, if any there be. We may assume the question could be raised upon the trial, and that it was not waived by failure to demur. But by the very terms of the second or modifying agreement, the trustees only assume to act or promise in behalf of those who assent to it, and it would seem to follow that as to those who did not assent there was no modification, and the trustees might still represent them and bring an action on the original lease to enforce the rights of such non-assenting parties. The trustees would be assuming no inconsistent position in so doing, and would not be in the least disregarding the modification which they had themselves executed, but only in behalf of those who assented to it.
 

 We are quite clear that if there be any holders of certificates who are entitled to regard the first contract between the plaintiffs and the railroad company as unmodified by any subsequent instrument, the plaintiffs may represent them as trustees in such an action as this.
 

 The defendants claim that the trustees had the power when representing a majority in value of the certificate holders, to bind the minority of such holders in regard to all things as to which the trustees had power to contract at all, and that such was the effect of their signing this modification. For the purpose of rend
 
 *305
 
 ering such claim intelligible, the foregoing full statement of facts regarding the organization of the association and the powers of the trustees and the board of managers has been given, although in the view I have taken of this case, the powers actually granted to the trustees of the association are of no material importance.
 

 It is said that this action of the plaintiffs in executing the second agreement was not the conduct of agents acting for principals named in the contract, but was that of trustees for all the holders of these certificates. They call attention to the form of the second agreement, in which the plaintiffs contract “ as trustees ” with the railroad company defendant
 

 It is true they are named in the beginning of the contract as trustees, but when they come to state for whom they intend to agree in that character, the matter is not left in the least doubt, and they say that they act as trustees on behalf of assenting •certificate holders only. There is no such joint contract that the plaintiffs cannot insist upon the railroad company’s performance of the original agreement in behalf of those who have assented to its modification, either personally or by any representative even assuming to act in their behalf. Eeading the two agreements together, there is no absurdity of result. As to the non-assenting -certificate holders, their interest is to be calculated at six per cent upon the total amount of certificates outstanding in their hands, and as to the others, the interest is to be five per cent on the amount of certificates held by them. This is so plain that it is not necessary to alter a word in either agreement in order to accomplish this result.
 

 By the modification in the second lease, which reduces the rate of interest from six to five per cent., it is quite obvious, and, indeed, it is so stated, that the reduction is confined to the holders of certificates who assent to it, and therefore as to those who do not, the higher rate of six per cent, is still to be calculated upon the amount of the certificates which they hold of the total amount outstanding. This is the necessary result of the languge used in the two agreements, regard being particularly had to that portion of the second which confines its operation to those holders of the ■certificates that assent to its terms. Thus the mere form of the second agreement, which sets forth that the plaintiffs act as trustees, is not conclusive, and when the full text of the agreement is considered, it is wholly unimportant.
 

 It cannot be contended that while strictly confining the exercise of their powers within the limits plainly stated in the agreement, the trustees have, neverthelesss, unwittingly done the very thing which, in substance, they therein state they will not do. The effect of the whole thing is quite plain. There is no difficulty in providing for the proper recovery, and the courts below have made a correct form of judgment embodying the principle stated.
 

 In our view, whether the Oar Trust is a partnership or a joint stock association, or a
 
 quasi
 
 corporation, is not of the least importance. What powers the trustees might have exercised under
 
 *306
 
 these agreements is irrelevant, as we have but to determine what powers they did exercise. And in reading this second or modified lease it becomes apparent they were not assuming to exercise any powers other than as the representatives of the assenting certificate holders, and hence no question can arise as to' the execution of a delegated power and an improper or illegal condition added to it by the donees of the power while engaged in its execution.
 

 I have carefully read through all the provisions of the second or modified agreement, and I do not find therein anything inconsistent with the fact that it was entered into by the plaintiffs in behalf only of the assenting certificate holders. Every detail provided for in the agreement must be read with the condition attached that it is only to apply to those holders who assent to the modification. The lowering of the rate of interest and the payment of the percentages are both applicable only to those who assent, and the calculation as to the amount due must be made upon that basis.
 

 The question whether the plaintiffs could maintain an action as trustees upon the modified agreement, in case the railroad company should fail to perform any of the terms or conditions imposed upon it therein, is not now before us, and hence need not be decided. The company has performed those conditions so far as concerns the assenting holders, and is ready to do so as to the others, and this action is not brought to enforce its provisions against the railroad company. The action is to recover the amount of rent and principal due the non-assenting holders by virtue of the first agreement or lease, and the fact that as to others the first lease has been modified can have no material bearing upon this issue. That there would seem possibly to be an injustice in the result, which permits these non-assenting holders to recover the rent and principal at the rate provided for in the first lease because of the action of the assenting shareholders in permitting its modification as to them, is something for which the courts are in no manner responsible, and for which they can provide no remedy. This is the agreement, is all that can be said It was no doubt supposed that all would consent, or if the railroad company and the assenting holders thought that the action of the trustees bound the minority of non-assenting holders, it is but another instance of the many which have preceded it, where parties have erred as to the legal effect of a written instrument, in the execution of which in a particular manner they became interested. The legal effect of such instrument cannot be altered to the prejudice of others by proof that some of the parties
 
 to
 
 it erred in their opinion regarding it.
 

 We think the judgment of the court below was right and it should be affirmed, with costs.
 

 All concur.