WILLIAM H. GLYNN vs. MICHAEL MORAN & others.

Suffolk.    March 14, 1899. — September 7, 1899.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Contract of Employment — Construction — Law and Fact.*

A. and B. executed a written contract, by which A. agreed to employ B. for the term of ten years at an annual salary of two thousand dollars, payable in equal weekly instalments, and B. agreed to devote his entire time, labor, and ability to the management and conduct of the business carried on by A., and to receive and obey all instructions given him from time to time by A. in the management and conduct of the business, and A. also agreed to pay B. as additional compensation a certain percentage of the net profits, if any accrued during the continuance of the contract, up to a sum named; and which concluded as follows: " Should the business, so managed and conducted by the party of the second part, not be successful, then the parties of the first part may determine to give up and discontinue said business at any time; and upon so doing, agree to pay, and the party of the second part agrees to receive, the sum of fifteen hundred dollars per annum, payable in equal weekly instalments, for the remaining part of the ten years covered by this agreement." *Held,* that the concluding provision in the contract was to be construed as in the nature of liquidated damages for A.'s failure to carry out his agreement, and not as requiring B. to render services for the fifteen hundred dollars per annum.

Where a written contract is clear, there is no necessity for resorting to the conduct and dealings of the parties for a construction.

CONTRACT, for the breach of an agreement executed on October 1, 1895, by the defendants, doing business as Charles E. Hall and Company, as the parties of the first part, and by the plaintiff as the party of the second part, and containing the following provisions:

" That the parties of the first part hereby agree to employ the party of the second part for the term of ten (10) years from the date hereof, at a salary, and upon the terms and conditions hereinafter expressed; and in consideration thereof the party of the second part hereby agrees to devote his entire time, labor, and ability to the management and conduct of the business carried on by the parties of the first part, in the manufacture and sale of soda water fountains.

" The party of the second part, under this agreement, will receive and obey all instructions given him from time to time

by said Charles E. Hall and Company, in the management and conduct of said business; and will, upon the receipt of all money, checks, drafts, notes, and securities whatsoever, turn the same over to said Charles E. Hall and Company, or deposit the same in such Bank, or Banking Institution, as, from time to time, they shall designate.

" As compensation under this agreement, the parties of the first part will pay to the party of the second part, the sum of Two Thousand (2,000) Dollars per annum, in equal weekly instalments, provided, that in any year during the continuance of this agreement, there should be a net profit arising to the parties of the first part, out of said business, then there shall be paid to the said William H. Glynn additional compensation for his services rendered under this agreement, a sum equal to ten (10) per cent of said net profits; provided, further, that said sum so paid as additional compensation, shall not exceed the sum of Two Thousand (2,000) Dollars.

" Should the business, so managed and conducted by the party of the second part, not be successful, then the parties of the first part may determine to give up and discontinue said business at any time; and upon so doing, agree to pay, and the party of the second part agrees to receive, the sum of Fifteen Hundred (1,500) Dollars per annum, payable in equal weekly instalments, for the remaining part of the ten (10) years covered by this agreement."

At the trial in the Superior Court, before *Bell*, J., the jury answered certain questions submitted to them, and, by direction of the judge, returned a verdict for the plaintiff in the sum of $115.40 ; and he alleged exceptions. The facts material to the point decided appear in the opinion.

*G. W. Anderson*, for the plaintiff.

*L. M. Friedman*, for the defendants.

MORTON, J. As we construe the contract for the breach of which this action has been brought, it is an agreement on the part of the defendants to employ the plaintiff for ten years at a salary of $2,000 a year, on terms and conditions set out in the instrument, in the management and conduct of the business carried on by the defendants in the manufacture and sale of soda water fountains, with what is in effect a proviso, that, if

the business should prove unsuccessful, the defendants may discontinue it at any time, paying the plaintiff thereafter $1,500 a year till the end of the ten years. The concluding provision we regard as in the nature of liquidated damages for the failure by the defendants to carry out their agreement.

It seems clear to us that what the plaintiff was employed to do was not to render general service but to take the management and conduct of the business carried on by the defendants in the manufacture and sale of soda water fountains. That was what he agreed " to devote his entire time, labor, and ability " to. It is in regard to the management and conduct of that business that he agrees that he " will receive and obey all instructions given him from time to time by said Charles E. Hall and Company," the defendants. It was on the net profits if any arising out of that business that the plaintiff was to have a percentage by way of additional compensation. And finally it is provided that if the business (i. e. the soda water fountain business) so managed and conducted by the defendants should not be successful, the defendants may discontinue it at any time. There is no provision as to the further employment of the plaintiff after the discontinuance of that business, or as to the nature or duties of any such employment, as it would seem there naturally would have been if it was expected that he would continue in their employment at a reduced compensation. It is true that the contract begins with an agreement on the part of the defendants " to employ the party of the second part (the plaintiff) for the term of ten years from the date hereof," without saying at what he is to be employed. But this is qualified by the words which follow, " upon the terms and conditions hereinafter expressed ; " and taking the contract as a whole, it is evident, we think, that what the plaintiff was employed to do and what he agreed to do was to manage and conduct that branch of the defendants' business which related to the manufacture and sale of soda water fountains, and that the various stipulations contained in the contract are introduced with reference to that business and its continuance or discontinuance, and not with reference to any other business or employment.

It also seems to us that, taking into account the nature of the contract and the circumstances under which it was entered into,

the reasonable construction of the provision in regard to the payment of $1,500 a year is, that it was intended by the parties as compensation to the plaintiff for what he would lose or might lose, in case the defendants discontinued the business before the end of ten years. The plaintiff was head buyer for Tufts and Company at the time when he entered into the contract, and had been for twelve years, at a salary of $2,000 per year. For aught that appears he would have continued in the same position, at the same salary. He did, in fact, go back to the employ of Tufts and Company at the same salary after the defendants had discontinued the soda water fountain business. He was upwards of forty years old. There was nothing to be gained by him in exchanging employers at the same salary. It is true that he was to have a percentage on the net profits, if any were made. But it is true, also, that, it was understood that the business might be a failure, or be discontinued by the defendants. It would be difficult to estimate the damages to which the plaintiff would be entitled if the defendants should deem it best, as they might and did, to discontinue the business. And what more natural or reasonable, in view of the uncertainties attending the venture and the assured position and salary that the plaintiff was leaving, than that it should be agreed that, if the business should be discontinued, the defendants would pay the plaintiff a certain sum by way of indemnity, either in a lump or by the year? See *White* v. *Dingley*, 4 Mass. 433; *Pierce* v. *Fuller*, 8 Mass. 223; *Chase* v. *Allen*, 13 Gray, 42; *Lynde* v. *Thompson*, 2 Allen, 456; *Cushing* v. *Drew*, 97 Mass. 445. It is possible that the plaintiff's right to the $1,500 per annum might stand on the simple ground that the defendants agreed to pay it if they discontinued the business, without resorting to the idea of damage at all. See *Smith* v. *Bergengren*, 153 Mass. 236. The result would be the same. The defendants contend that the parties, by their acts and conduct and dealings, have construed the proviso in regard to the payment of the $1,500 to require the plaintiff to render services therefor, and under instructions from the court, which permitted them to pass on that question, the jury found that the parties, by their conduct and dealings, have construed that provision as requiring the plaintiff to render service in return for the $1,500 per

annum. We think that this was error. Where the contract is clear, there is no necessity for resorting to the conduct and dealings of the parties for a construction. In such a case the contract speaks for itself. Moreover, there was evidence tending to show that when the defendants notified the plaintiff that they had sold out the soda water fountain business, he told them that he should waive none of his rights under the contract, and that he maintained that position. It does not follow, however, that the plaintiff is entitled to recover $1,500 a year from the time when his employment was ended by the sale of the business. If the arrangement made by the defendants for the return of the plaintiff to his old place at the old salary, with Tufts and Company, and his subsequent employment by them and by the defendants, were accepted by him as a performance by the defendants of the contract during those times, or were so understood and treated by the parties, the plaintiff would be entitled to recover only from the date when he finally ceased to work for the defendants. Whether they were so accepted by him, or were so understood and treated by the parties, or what was the understanding in reference to such employment, were questions for the jury upon all the evidence.

As the exceptions must be sustained on the ground indicated above, it is not necessary to consider other exceptions, which the plaintiff has not argued, though he has not waived them, and which relate mostly to questions of evidence and matters which may not, and probably will not, arise at another trial.

*Exceptions sustained.*