## DELAWARE SECURITIES CO. v. METROPOLITAN TRUST CO. OF CITY OF NEW YORK.

(Circuit Court, S. D. New York. July 17, 1906.)

1. **TRUSTS—PLEDGE OF STOCKS AS SECURITY FOR BONDHOLDERS—CONSTRUCTION OF AGREEMENT.**

Complainant, a corporation, entered into a trust agreement by which it agreed to transfer to defendant as trustee stock in certain other corporations as security for its bonds. The agreement provided that complainant should have the right to vote such stock so long as it was not in default on the bonds "or under this trust agreement or any of the covenants herein." *Held*, that complainant was not entitled to a proxy from defendant to vote the stock of one of the corporations which had been transferred to defendants name until it had placed defendant in position to also obtain a transfer to it of the stock of the others as provided in the agreement.

2. **SAME—EFFECT OF DEVIATION FROM AGREEMENT BY PARTIES.**

Where the terms of an agreement, and especially a trust agreement under which the trustee is to protect and care for the interests of others, are not of doubtful import or meaning there is no room for the application of the rule with respect to the effect of a practical construction by the parties, and the rights of the trustee under the agreement cannot be affected by the fact that, through neglect or misapprehension of its duty, it has done or permitted acts which were not justified under the terms of the trust.

3. **SAME—PROXIES TO PLEDGOR OF STOCK IN TRUST—RIGHT OF TRUSTEE TO LIMIT.**

Where, under an agreement by which stock of other corporations was transferred to a trustee as security for the bonds of complainant corporation, complainant was to have a proxy to vote "at all meetings of the stockholders on all shares of stock * * * for the election of directors and for every other purpose not inconsistent with the provisions of this trust agreement," the trustee has the right in giving such proxy to limit its terms so far as reasonably necessary to make it impossible for the pledgor to vote the stock for any purpose that is inconsistent with the provisions of the trust agreement.

In Equity. Suit by the Delaware Securities Company, a corporation of the state of Delaware, against the Metropolitan Trust Company of the city of New York, successor to the Atlantic Trust Company, a corporation of the state of New York, as trustee holding certain shares of stock in the Laflin & Rand Powder Company, a New York corporation, actually owned by the said securities company, to compel the said trust company, defendant, to execute and deliver to it a proper proxy for voting the said stock of the Laflin & Rand Powder Company at the stockholders meeting of that company.

Townsend, Avery & Button, for complainant.

Parsons, Closson & McIlvaine (Herbert Parsons, of counsel), for defendant.

RAY, District Judge. October 1, 1902, the Delaware Securities Company executed and delivered to the Atlantic Trust Company, later merged into the Metropolitan Trust Company, which succeeded to the rights, obligations and liabilities of the Atlantic Trust Company, so far at least as this controversy is concerned, a certain trust agreement to secure certain debentures to the amount of about $4,-000,000, to be issued by the securities company under and pursuant to said trust agreement. The property deposited under this trust agreement as security consisted of certain shares of stock, viz.: 9,971 shares of the Laflin & Rand Powder Company, 7,000 shares of the Eastern Dynamite Company, a New Jersey corporation, and 10,000 shares of the E. I. du Pont de Nemours & Co.

This trust agreement contains, among other agreements and stipulations, the following:

"Sec. 14. The trustee under this trust agreement shall cause to be transferred into its name as trustee, or into the name or names of its nominee or nominees, all shares of the capital stock, the certificates for which shall be delivered to the trustee hereunder. The securities company shall be entitled to collect any and all dividends which, from time to time, shall be declared on the stock, at any time pledged with the trustee hereunder, and the trustee shall, from time to time, deliver to the securities company suitable orders in favor of the securities company or its nominee for the payment of such dividends; provided, however, that no default shall have been made in the payment of the principal or of the interest of any of the bonds secured hereby, or in the observance and performance of the covenants therein contained, or contained in this trust agreement, and that no order shall have been made for the appointment of a permanent receiver of the said securities company or powder company, or for winding up or liquidating the business or affairs of either of the said companies.

"Sec. 15. The securities company shall have the right to vote at all meetings of the stockholders on all shares of stock, at any time pledged hereunder, for the election of directors and for every other purpose not inconsistent with the provisions of this trust agreement; provided, however, that the said securities company shall not be in default under said bonds or under this trust agreement, or of any of the covenants herein.

"Sec. 16. The trustee may, at any time, do whatever may be necessary for the purpose of preserving the corporate existence of the powder company and shall, upon the request of the securities company, assign and transfer, or caused to be assigned and transferred, such shares of the powder company as may be necessary to qualify persons who may be chosen directors or officers of the powder company. In the event of the trustee so assigning or transferring said shares it may, in its discretion, require the persons to

whom such shares are transferred, to reassign the same in blank and deliver the certificates therefor, and the trustee may make such other arrangements, subject to the provisions of this trust agreement, as it may deem necessary for the protection of the bondholders.

"Sec. 17. If the securities company shall make default in the payment of the principal or interest of any of the bonds secured hereby, or in the observance or performance of any of the covenants of this trust agreement on its part, then, from and after such default, and as long as such default shall continue, the trustee shall exercise in its absolute discretion, for the sole and exclusive benefit of the holders of said bonds, all the rights of ownership of said stock, including the voting power thereon and the right to collect the dividends of said stock and apply the same as hereinafter provided."

"Sec. 19. In case of the happening of any default, then during the continuance of such default, the trustee shall revoke all assignments, orders, or other instruments by it executed for the purpose of enabling the securities company to collect and receive dividends on the stock held hereunder, and thereafter the trustee shall be entitled to receive and collect all dividends which shall become payable upon said stock, and all sums so received or collected by the trustee as dividends upon such stock, after deducting therefrom all proper charges, costs and expenses payable to the trustee hereunder, shall by the said trustee be applied to the payment of the interest in default in the order of maturity of the instalments thereof, such payments to be made ratably to the persons entitled thereto without discrimination or preference; provided, however, that no coupon or claim for interest belonging to any bond which in any way at, before or after maturity shall have been transferred and pledged separate and apart from the bond to which it relates, shall, unless accompanied by such bond, be entitled in case of any default hereunder, to any benefit of or from this trust agreement until the payment in full of the principal of the bonds issued hereunder and of all coupons and claims for interest not so transferred or pledged, shall have been made."

"Sec. 24. The securities company will from time to time duly pay all taxes, assessments, and other charges lawfully imposed upon the trust estate or upon any part thereof, and it will also pay and discharge all taxes, assessments and other charges lawfully imposed upon the interest of the trustee in the trust estate; provided, however, that the said securities company shall not be required to pay any such tax, assessment or charge so long as it shall in good faith contest the validity thereof. The securities company will at all times, until the payment of the principal of said bonds, keep an office or an agency in the borough of Manhattan of the city of New York, where notices and demands, provided for in this trust agreement, may be served, and, in default of any such office or agency, presentation, and demand, may be made and notices served at the office of the trustee in the city of New York, or at the office of any successor to it in the trust."

"Sec. 26. Until all the bonds hereby secured shall be paid, the securities company and the powder company shall and will fully and faithfully perform their corporate duties, and use and exercise their corporate authorities and franchises, and shall not permit nor suffer any use or nonuse of their corporate rights and franchises, whereby the same may in any wise be forfeitable or forfeited. The capital stock of the powder company shall not be increased beyond its present authorized amount and the indebtedness of the powder company [except so far as may be necessary for properly operating said company] shall not be increased, nor shall the securities company issue bonds of any kind in excess of the amount herein provided for, until all the bonds hereby secured shall have been fully paid. The securities company will not voluntarily create or suffer to be created any lien, debt or charge having priority to, or preference over, or equality with the lien of this trust agreement upon the shares of stock pledged and deposited hereunder or any part thereof, or upon the income derived therefrom, and save, subject to this trust agreement, will not sell, encumber or by any voluntary act part with any of such shares or with its right, title and interest therein or the voting powers thereof."

"Sec. 30. Any instrument required by this trust agreement to be signed and executed by the bondholders, may consist of any number of concurrent instruments of similar tenor, and may be executed by such bondholders in person or by an agent or attorney authorized so to do in writing. Nothing contained in this trust agreement shall prevent the consolidation or merger of the securities company, or of the powder company, with any other corporation or corporations, provided that the holders of a majority in amount of the said bonds then outstanding shall consent thereto, and such consent shall be stamped or indorsed upon said bonds."

At the time of the execution and delivery of the trust agreement and of the deposit of the stock as security under its provisions the said Atlantic Trust Company delivered to the securities company a proxy to vote the said stock of the Laflin & Rand Powder Company, which proxy reads as follows:

"Know all men by these presents, that Atlantic Trust Company, trustee, hereby nominates and appoints Delaware Securities Company, a corporation existing under the laws of the state of Delaware, its true and lawful attorney for it and in its name, place and stead to vote at any regular or special meeting of the stockholders of the Laflin & Rand Powder Company, a corporation existing under the laws of the state of New York, all of the stock of the said Laflin & Rand Powder Company now or hereafter standing in the name of the said Atlantic Trust Company as trustee under the provisions of the trust agreement dated October 1, 1902, between the said Delaware Securities Company and said Atlantic Trust Company, trustee; provided, however, that this proxy shall not be used for the purpose of voting said stock in any way inconsistent with the provisions of said trust agreement. In witness whereof, the said Atlantic Trust Company, trustee, hath caused these presents to be signed by its president and its corporate seal to be hereto affixed this 8th day of October, 1902.

"[Signed.]                              Atlantic Trust Company.
"Attest:                                        "By L. V. F. Randolph, President.
    "Benjamin Strong, Jr., Secretary."

Similar proxies to vote the other stock so pledged were also given. The proxy to vote the Laflin & Rand stock expired 11 months from its date. Subsequently, and about March 7, 1904, a formal demand for a proxy, in substance, the same as the one above quoted, was demanded by the securities company, and refused. This refusal seems to have been based on two grounds, viz.: Generally that the securities company is not entitled to a proxy such as it had before received and specially that as the shares of stock in the Dynamite and du Pont de Nemours Company had not been transferred there was a default by the securities company which exonerated the defendant company from giving any proxy. The defendant, trust company, puts the questions involved in the following language:

"(1) Ought the certificates of stock of the Eastern Dynamite Company and the E. I. de Nemours & Company to be transferred into the name of the Trust Company? (2) Is the Delaware Securities Company in default because they have not been so transferred? (3) Provided there is no default, must the trust company give to the securities company a proxy on the Laflin & Rand Powder Company stock to vote for the election of directors, and as to the rest simply in the words, or substantially and in effect in such words as 'and for all other purposes not inconsistent with the provisions of the trust agreement,' or is it its duty to require the securities company to state for what specific purposes, in addition to the election of directors, the proxy can be used, and to specify those in the proxy? (4) If the trust company has taken the incorrect attitude is it not protected under the trust agreement in that it acted under the advice of counsel?"

The claims of the complainant company are thus summarized:

"First. Such form of proxy is required by the construction of section 15 of the trust agreement. Second. The situation and understanding of the parties and the surrounding circumstances, at the time of the execution of the trust agreement require such form of proxy. Third. At the time of the execution and delivery of the trust agreement, as a part of the same transaction, such form of proxy was agreed upon, and the contract so interpreted by the parties thereto. Fourth. The defendant's contention would construe the trust agreement in such a manner as to render its provisions void as against public policy. Fifth. There is no default on the part of the complainant in the transfer of the Eastern Dynamite or de Nemours Company stock."

Is complainant company in default such that it is not entitled to any proxy whatever to vote any of the stock? By section 15 the right of the securities company to vote on the stock pledged and consequently its right to receive a proxy is on condition it is not in default in performing its covenants and agreements, express or implied, contained in such trust agreement. As the shares of stock stood in the name of the securities company, and could only be transferred on the books of the companies, and new certificates issued on the proper transfer and surrender of the old certificates, the securities company had a duty to perform in carrying out or in enabling the trust company to carry out the provision of section 14, which says, the trustee shall cause to be transferred into its name as trustee, or into the name of its nominee or nominees all shares of the capital stock and the certificates therefor shall be delivered to the trustee. If it has refused to properly transfer the old stock or surrender the old certificates or do what it must do to properly transfer the stock to the trust company, and the doing of such acts has not been waived, this action cannot be maintained for he who comes into equity must come with clean hands and after having performed all conditions precedent, if any. 6 Pomeroy's Eq. Jurisprudence & Equitable Remedies, being volume 2 of Equitable Remedies (3d Ed.) § 806. In section 805 it is stated:

"The doctrine is fundamental that either of the parties seeking a specific performance against the other must show, as a condition precedent to his obtaining the remedy, that he has done or offered to do, or is then ready and willing to do, all the essential and material acts required of him by the agreement at the time of commencing the suit, and also that he is ready and willing to do all such acts as shall be required of him in the specific execution of the contract according to its terms. In the language often used, he must show himself 'ready, willing, desirous, prompt, and eager.' There are two apparent exceptions, depending upon strictly equitable considerations: (1) A strict performance at the very stipulated time is not always essential; and (2) partial and immaterial failures of title or defects of the subject-matter, if admitting of compensation, may not prevent the vendor from enforcing the remainder of the agreement."

While this suit is not perhaps, strictly speaking, an action for specific performance in substance and effect, it is and the most, if not all, the rules of equity applicable there apply here. It is conceded in the record "that at the time of the execution of the trust agreements, there were deposited with the Atlantic Trust Company certificates for 10,000 shares of stock of E. I. du Pont de Nemours & Co., and also certificates for 7,000 shares of stock of the Eastern Dynamite

Co., and that these certificates all had proper powers of attorney for their transfer upon the books of the respective companies. It is further conceded, for the purposes of this action, that at this time there were deposited 5,336 shares of the capital stock of the Laflin & Rand Powder Company with proper power of attorney for transfer." Shortly thereafter the balance of the shares of stock of the Laflin & Rand Powder Company were delivered with proper powers of attorney for their transfer and all of this stock, 9,971 shares, was duly transferred on the books of the company, and new certificates issued and duly delivered to the trust company. It appears, however, that this stock of the du Pont de Nemours Company and of the Eastern Dynamite Company did not stand in the name of the securities company, but in the names of various other parties, the owners thereof, from whom it was secured for the purpose of carrying out the trust agreement, and while there was, when delivered to the trust company, attached thereto, proper powers of attorney for the transfer to it of all such shares, the securities company had no direct control over it, or over its actual transfer on the books of the two companies. It was within the power of the trust company proceeding against the real owners who had signed these powers of attorney and the companies issuing the stock, to compel the actual transfer on the books of the company. This it did not do and has not done. I know of no theory upon which the trust company can be compelled to give a proxy to the securities company to vote this stock prior to its actual transfer to the trust company. The trust company does not own it or as yet hold it, so as to control it and be entitled to vote it as trustee.

Section 20 of the general corporation law (Laws 1892, p. 1807, c. 687 as amended by Laws 1901, p. 975, c. 355), says:

"Sec. 20. Qualification of Members as Voters. Unless otherwise provided in the certificate of incorporation, every stockholder of record of a stock corporation shall be entitled at every meeting of the corporation to one vote for every share of stock standing in his name on the books of the corporation; and at every meeting of a nonstock corporation, every member, unless disqualified by the by-laws, shall be entitled to one vote. The stockholders of a stock corporation, by a by-law adopted by vote at any annual meeting, or at any special meeting duly called for such purpose, may prescribe a period, not exceeding forty days prior to meetings of the stockholders, during which no transfer of stock on the books of the corporation may be made. Except in cases of express trust, or in which other provision shall have been made by written agreement between the parties, the record holder of stock which shall be held by him as security, or which shall actually belong to another, upon demand therefor and payment of necessary expenses thereof, shall issue to such pledger or to such actual owner of such stock, a proxy to vote thereon."

I do not think this applies here as there is a provision in regard to it in the trust agreement. But even if it does apply the stock stood on the books of the company in the name of other parties, not in the name of the trust company. There is evidence tending to show that when the dispute arose as to the proper form of proxy to be given to vote the stock of the Laflin & Rand Company, and of the other companies, as well, obstacles were thrown in the way of the proper transfer of the stock of the Dynamite and the du Pont de Nemours

Companies, the claim being made that there had been an oral agreement that the transfers should be to a nominee or nominees of the trust company agreed upon, and not to it, and also that a transfer should not be made in face of the claim of the trust company that the proxies given should contain certain limitations upon the holder of the proxies voting the stock, such as would limit it unduly was the claim. There is evidence tending to show that the securities company, or some of its officers, had to do with this obstruction of the transfer of the stock. This suit is brought to compel the giving of a proxy to vote the Laflin & Rand stock, notwithstanding the fact that the stock of the other companies has not been transferred to the trust company, such proxy to contain a limitation in these words:

"Provided, however, that this proxy shall not be used for the purpose of voting said stock in any way inconsistent with the provisions of said trust agreement."

The defendant denies that it is under any obligation to give a proxy to vote the Laflin & Rand stock until the other stock pledged as security for the debentures mentioned in the trust agreement has been properly transferred to it. It denies that there was any legal or valid agreement naming a nominee or nominees to whom the stock should be transferred, and I do not find evidence to sustain a finding that any such agreement was made. Neither can this trust agreement as to the giving of proxies be made divisible so as to permit the securities company to demand and receive a proxy in any form to vote the Laflin & Rand stock so long as it is a party to proceedings which prevent the proper transfer to the trustee company of the other stock. But the parties now assume the position that the transfers will be made when it is settled what form of proxy is to be given or what form of proxy the securities company is entitled to. It is always the duty of a court of equity to settle, if possible, the disputes, contentions, and differences of parties when once before it, and the subject-matter is well defined.

The complainant contends that, because of the giving of the proxy hereinbefore set forth, the parties have given a practical construction to the trust agreement which should control. There is no question of the general rule that where there is doubt as to the meaning of words or terms used in a contract or agreement the practical construction and interpretation of the parties given to it by their conduct and proceedings under it in carrying it into effect are of great weight and there may be cases where this so-called practical construction and interpretation are controlling. Dodge v. Zimmer, 110 N. Y. 43, 17 N. E. 399; Nicoll v. Sands, 131 N. Y. 19, 29 N. E. 818; McClanathan v. Friedel, 85 Hun, 175, 32 N. Y. Supp. 588; Sattler v. Hallock, 160 N. Y. 291, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686. To the same effect are Kauffman v. Raeder, 108 Fed. 171, 175, 47 C. C. A. 278, 54 L. R. A. 247; Fox v. Tyler, 109 Fed. 258, 260, 48 C. C. A. 356; Accumulator Co. v. D. St. R. Co., 64 Fed. 70–74, 12 C. C. A. 37; Salt Lake City v. Smith, 104 Fed. 457, 462, 43 C. C. A. 637, cited by complainant. But where the terms of an agreement, especially a trust agreement of this kind where the trustee represents, and

is to protect and care for the interests of a large number of persons, are not of doubtful import or meaning there is no room for the application of the rule. "Where the meaning of the instrument is clear in the eye of the law the error of the parties cannot control its effect." Railroad Co. v. Trimble, 10 Wall. (U. S.) 367, 19 L. Ed. 948; Russell v. Young, 94 Fed. 45, 36 C. C. A. 71; Insurance Co. v. Doll, 35 Md. 89, 6 Am. Rep. 360; Glynn v. Moran, 174 Mass. 233, 54 N. E. 535; Railway Co. v. Blackman, 44 Minn. 514, 47 N. W. 172; Humphreys v. N. Y. & H. R. R. Co., 121 N. Y. 435, 24 N. E. 695; Borley v. McDonald, 69 Vt. 309, 38 Atl. 60; Davis v. Shafer (C. C.) 50 Fed. 764; Lawson on Contracts (2d Ed.) p. 458, § 400; Wald's Pollock on Contracts (3d Ed. Williston) 572. The trustee, by neglect of duty or by misapprehension of duty or of legal obligations imposed, and the consequent doing of acts not justified or warranted by the terms of his trust, cannot change the agreement under which he is acting. The conduct of the parties may be such and of such continuance as to show that a contract in writing has been abandoned and a new one, by parol, substituted. But there is no pretence of this here. There is nothing in the trust agreement itself that prescribes the form of proxy or its terms or conditions. It is not even provided, in terms, that a proxy shall be given. But from the language of section 15 of the trust agreement it is plainly implied that the securities company is to have a proxy else it could not vote "at all meetings of the stockholders on all shares of stock, * * * for the election of directors, and for every other purpose not inconsistent with the provisions of this trust agreement." When, in a position to receive a proxy, the securities company is entitled to one that will enable it to do that, and no more; and, in giving it, the trust company has the right to limit its terms, so far as reasonably necessary to make it impossible for the securities company to vote the stock for any purpose that is inconsistent with the provisions of the trust agreement. But it has no right on theory, or imagination, or conjecture, to refuse a proxy to vote any of this stock. In other words the trust company has no right to "conjure up" a possible contingency where the securities company possibly might vote in a way that would be inconsistent with the provisions of the trust agreement. There is no presumption it will do this. The presumption is the other way.

We are, therefore, to look at the agreement and ascertain, if possible, what votes would be for a purpose inconsistent with the provisions thereof. The use of a proxy for such a purpose may be prohibited therein. If certain purposes for which the stock might be voted are inconsistent with the provisions of the trust agreement, such purposes may be named in the proxy and by its terms the powers conferred limited accordingly. Such limitations in the proxy would give notice at the meeting when it was used of the limitation. And I think that under section 17 the proxy may provide that in case the securities company shall make default in the payment of either principal or interest, on any of the bonds secured by such trust agreement, or in performing any of the covenants thereof to be performed by it, the proxy shall become void. So as to taxes under section 24.

And, under section 26, the terms of the proxy might well have a provision that no vote shall be cast by its holder authorizing the company or its officers not to perform any corporate duty, or to increase or aid in increasing the capital stock of the powder company beyond the amount authorized when the trust agreement was made, or the increase of the indebtedness of that company, except as necessary for properly operating it, or give any vote that would give or aid in creating a lien on the stock of that company that would have priority over the lien of the trustee under the agreement. So, there may be other well-defined acts that the holder of the proxy might vote to have done by the company which would be inconsistent with the provisions of the trust agreement. The court will not attempt at this time to point out or exactly define all the limitations that may properly go in the proxies to be given by the trust company when all the stock of the three companies shall have been properly transferred and delivered to it. This may be done on the settlement of the decree when both parties can be heard.

There will be a decree that the securities company shall have executed and delivered to it by the trust company proper proxies to vote the stock of the Laflin & Rand Powder Company, of the Eastern Dynamite Company, and of the E. I. du Pont de Nemours & Company, containing, in substance, the limitations above suggested, and such other as the court may name on the settlement of the decree, and that the trust company shall execute and deliver same to the said securities company, when all the shares of stock of said companies, not redeemed under the provisions of the trust agreement, pledged or agreed to be pledged thereunder shall have been properly transferred to the trust company on the books of the respective companies, and the certificates of stock delivered to the said trust company, and which execution and transfer of stock and delivery of certificates is made a condition of the execution and delivery of any proxy. That such transfers and deliveries shall be completed within 30 days after service of a copy of the decree, and that if not made within that time, then the trust company shall not execute or deliver any proxies. The parties should submit to the court proposed limitations and conditions to be inserted in the proxies and serve same on each other and may move for a settlement of the decree at my chambers in Norwich, N. Y., on any day in July, 1906.