EMMA LOUISE ALLEN, Plaintiff, *v.* OSCAR G. MURRAY RAILROAD EMPLOYES' BENEFIT FUND, Defendant.

(Supreme Court, Yates Special Term, May, 1920.)

Lease — covenants — pleading — damages.

> A covenant in a lease of a house for the life of the tenant "together with the yard, garden, barn and other outbuildings thereto belonging" that the lessor will keep the "premises in good and tenantable repair," binds his devisee to keep the lawns and gardens of the demised premises in good condition.
>
> A complaint alleging that said devisee has refused to keep the grounds and gardens of the premises in good and tenantable repair, to the damage of the life tenant in a sum certain, which she had been obliged to and did expend in keeping such grounds and gardens in good and tenantable repair, states a cause of action and is good against demurrer.

DEMURRER to complaint upon the ground that it does not state facts sufficient to constitute a cause of action.

George S. Sheppard, for plaintiff.

Kimball & Lown (James M. Lown, Jr., of counsel), for defendant.

KELLY, J. The complaint alleges that on August 16, 1915, one Oscar G. Murray was the owner of certain premises in the village of Penn Yan, consisting of a dwelling-house, together with the yard, garden, barn, and other buildings thereto belonging, which premises were occupied by the plaintiff, and that on the day mentioned said Murray leased said premises to the plaintiff by an instrument in writing under seal, a copy of which is annexed to the complaint. The lease is of " the following described premises: All that house, situate in the Village of Penn Yan, County of Yates and State of New York, known as No. 227 North Main Street, together with the yard, garden, and other outbuildings thereto belonging, now occupied by the lessee, and formerly occupied by John S. Sheppard, of said village, and being the same premises conveyed to the lessor by deed dated August 16th, 1915, and recorded in Yates County Clerk's Office in Liber 108 of Deeds at page 120.'' The premises are leased to the plaintiff for and during her life, but upon the express condition that if the lessee shall at any time during the term marry, the lease shall immediately terminate and become void, with right of re-entry to the lessor. The annual rent is one dollar. The lessee covenants that she will not suffer or commit waste, or assign or underlet the premises without the written consent of the lessor; that she will use said premises for dwelling and for no other purpose; that the lessor may at all reasonable times enter on the

premises to examine the condition of the same, and that the lessee will at the termination of the tenancy yield up the premises in as good condition as at the date of the lease, reasonable wear and damage by the elements excepted.

The lessor covenants to pay all taxes, rates and assessments of every description during the term payable in respect of said premises; that he will during the term insure and keep insured against damage by fire said demised dwelling and all buildings upon the said premises, and, " That the lessor will keep the premises in good and tenantable repair."

The complaint further alleges that at the time of the making of the lease, " said premises consisted, and now consist of a large and valuable residence surrounded by spacious grounds of about two acres of land, and are located upon the principal street of the Village of Penn Yan, New York, opposite the public park in said village. That at the time when said lease was made, the lawns and gardens of the demised premises were in good condition, and were maintained in good condition by said lessor during his lifetime, pursuant to the terms of said lease and that it was the intention of said lessor by said lease to bind himself, his heirs and assigns, to employ all labor and incur all expense which might be necessary to keep the buildings and grounds of the demised premises in the same good condition in which they were at the time of the execution of said lease." It is alleged that the lessor died on March 14, 1917, and that by his will his residuary estate, including the demised premises, was devised to the defendant, which is still the owner thereof and bound by the obligations and covenants of the lessor; that plaintiff has performed all the terms of said lease to be by her performed; that the lessor in his lifetime performed all the terms of the

lease, but that the defendant since June 1, 1918, " has refused to keep the grounds and gardens of said demised premises in good and tenantable repair, and has thereby broken said contract, to plaintiff's damage nine hundred and eighty dollars, which sum plaintiff has been obliged to expend and has expended in keeping such grounds and gardens in good and tenantable repair." The plaintiff demands judgment for $980.

The defendant demurs upon the ground that the complaint does not state facts sufficient to constitute a cause of action, and argues that the covenant on the part of the lessor to keep the premises in good and tenantable repair, refers only to the structures thereon and creates no obligation to keep up the gardens and grounds.

It will be noted that the precise allegation in the complaint is that defendant " has refused to keep the grounds and gardens of said demised premises in good and tenantable repair  *  *  *  to plaintiff's damage nine hundred and eighty dollars, which sum plaintiff has been obliged to expend and has expended in keeping such grounds and gardens in good and tenantable repair." The demurrer admits all the essential facts alleged in the complaint and every legitimate inference and intendment is in favor of the pleading. We have, therefore, the fact that since June 1, 1918, the plaintiff has expended $980 in keeping the grounds and gardens which are expressly referred to in the description of the demised premises in the lease, in good and tenantable repair. The lease describes the " premises " as a " house  *  *  *  together with the yard, garden, barn, and other outbuildings thereto belonging." We have no particulars of the expenditure, we do not know what work was done or what repairs were made. The defendant insists that to speak of keeping a garden in repair, is to use a term unfamiliar and

unknown. But I am not able to agree with the learned counsel for defendant, that the complaint is not good against demurrer. It may be that expenditures looking simply to beautifying the yards, gardens and grounds, are not within the strict letter of the lessor's covenant. It seems to me that I am not called upon to decide that question. The learned counsel for defendant insists that a covenant of this character will not be extended by implication (*Witty* v. *Matthews,* 52 N. Y. 512); that the lease is free from ambiguity, and must be interpreted according to its terms, and that the plaintiff cannot resort to outside evidence to ascertain the intentions of the parties. *Humphreys* v. *New York, L. E. & W. R. R. Co.,* 121 N. Y. 435. The learned counsel for plaintiff insists that " It has been many times held that the practical construction put upon a contract by the parties to it is sometimes almost conclusive as to its meaning (*Nicoll* v. *Sands,* 131 N. Y. 24) and that there is no surer way to find out what the parties mean than to see what they have done." *Fagan* v. *Urlich,* 166 App. Div. 342; affd., 222 N. Y. 696; *Trustees of Southampton* v. *Jessup,* 173 id. 84–89.

Let us consider the exact language of the lease. The covenant of the lessor was to keep the " premises in good and tenantable repair." It is evident from the language of the lease itself that he had in mind the distinction between " dwellings," " barns " and " buildings," and the " premises " as a whole which included the structures erected thereon. " The word ' premises ' often means the land. As applied to realty it means lands and tenements. ' Premises,' includes land and everything appurtenant thereto." 6 Words & Phrases, 5511 and cases cited. In making the covenant he referred to the property leased " now occupied by the lessee," and as Chief Justice Wilde said in *Heming* v. *Willets,* 7 C. B. 709–715: " He has

taken the pains to exclude the possibility of doubt by
describing the subject matter as ' in the occupation of
James Priest, his undertenant or undertenants.' The
land, as well as the five cottages, was in the occupa-
tion of Priest: there is, therefore, abundantly suffi-
cient to pass the whole, not by implication merely, but
by the very words of the will. The word ' premises,'
is commonly used as comprising land and houses and
other matters. Either ' tenements,' or ' premises '
would be sufficient to include the land. Taking it,
however, in conjunction with the words descriptive of
the occupation the case is perfectly clear and free
from doubt." Trees, permanent shrubbery and bushes
form part of the land. *Goodyear* v. *Vosburgh,* 57
Barb. 243; *Brooks* v. *Galster,* 51 id. 196; *Green* v. *Arm-
strong,* 1 Den. 550. Growing grass partakes of the
nature of realty. *Matter of Chamberlain,* 140 N. Y. 390.
Injury to the freehold has always been ground for
action for damages. "An injury to growing grass or
annual crops is, as a general rule, an injury to the pos-
session, and the landlord cannot maintain an action
therefor. This is because the title and right to the
possession of the crops are in the tenant, but in a case
where grass is destroyed by fire, it may result in a
permanent injury to the sod, which may be an injury
to the reversion for which the landlord may sue
*  *  *. An injury to the trees or timber on the
demised premises is as a general rule an injury to
the reversion for which the landlord may sue." 16
R. C. L. § 108, and cases cited. Destruction of fences,
or the wrongful erection of fences or negligent flooding
or overflowing of land constitute injuries for which the
law gives redress. Nuisances affecting the enjoyment
or tenantable condition of property may be abated.
The damage done, and the cost of restoring the prop-

11

erty damaged appear to be legitimate subjects of inquiry.

The defendant argues that the word " repair " is not ordinarily used with reference to the maintenance of gardens and grounds. However that may be, it was used by the lessor in the case at bar with reference to the " premises " demised. Of course there is nothing in the word " repair " which confines its application to dwellings or structures. Nearly everything, animate and inanimate, needs repairing as time goes on. The accepted definition of the word presents no such limitation on its use. " Restoration to a sound or good state after decay, waste, injury or partial destruction: supply of loss: reparation. Good or sound condition kept up by repairing as required." Century Dictionary, " Repair." The lessor did not limit his covenant to the house, or the barn or the outbuildings, his agreement was to " keep the premises in good tenantable repair." It seems to me that the allegation in the complaint is good against demurrer. It may be that upon ascertaining the particulars of the plaintiff's expenditure, it will appear that she is claiming for matters not within the language of the lease or the intention of the parties to that instrument, but it is apparent that there are many items of damage or injury to the premises, exclusive of the house and buildings, which would come within the strict letter of the covenant, and which should be repaired in order to make the premises tenantable, which was the express agreement of the lessor. In my opinion the complaint states a cause of action.

The demurrer is, therefore, overruled, with costs to the plaintiff, and with leave to defendant to withdraw the demurrer and serve an answer upon payment of costs.

Ordered accordingly.