15063

CARTER v. McCALL

(8 S. E. (2d), 844)

September, 1939.

The order of Judge Sharkey requested to be reported follows:

The plaintiff is a real estate broker. He brings this action to recover what he alleges to be compensation due him pursuant to an oral agreement entered into with defendant concerning certain real estate owned by defendant. The terms of

the agreement and the services rendered by plaintiff pursuant thereto, as alleged in the complaint and as shown by the testimony, may be summarized as follows:

Pursuant to negotiations conducted by plaintiff, defendant purchased from the County of Florence a tract of land adjacent to the City of Florence, for the sum of $5,000.00, making a cash payment of $1,000.00 and giving to the county a purchase money mortgage for $4,000.00 to secure the balance of the purchase price. Under the agreement which she then made with plaintiff the land was subdivided into forty lots and was listed with plaintiff for sale, as her agent. The compensation provided for was to consist of three elements: first, a commission of 10 per cent. on each sale made; second, 50 per cent. of the profit remaining after payment from the sale proceeds of the $5,000.00 purchase price, together with all expenses including the broker's commission of 10 per cent.; and finally a cash settlement upon the basis of one-half the value of any lots which remained unsold after the purchase price of $5,000.00 had been paid from the sale proceeds. Plaintiff further alleges that pursuant to this agreement he undertook to sell the lots and did sell thirty-one of the forty lots, as shown by the itemized schedule attached to the complaint. From the proceeds of these sales the defendant was reimbursed for the initial payment of $1,000.00, and her purchase money mortgage to the county in the sum of $4,000.00 was paid in full. There then remained from said proceeds, after deducting all expenses, including plaintiff's commissions as broker, a balance of profit due plaintiff of the sum of $541.12, which plaintiff claimed under the agreement. The 10 per cent. commissions accruing to plaintiff on actual sales made were, with the exception of three items, collected and retained by him. He alleges full performance of all his obligations under the contract, demand on defendant for the remaining portion of his compensation, and the breach by defendant of the contract, by her refusal to pay the balance due.

Plaintiff's prayer is for judgment of $541.12—being one-half of the alleged balance of net profit; and for the further sum of $1,887.50—being one-half of the value of the nine unsold lots.

All the foregoing allegations of fact were supported by relevant evidence offered by plaintiff at the trial of the cause at the September, 1939, term of Court. At the conclusion of plaintiff's evidence defendant moved for a nonsuit upon these grounds:

1. That the suit is brought on an alleged contract concerning land which is not in writing as required by the statute of frauds, and hence there can be no recovery thereon.

2. That the part performance of the alleged parol contract which might sustain an action for specific performance in equity affords no relief in this action at law for damages resulting from the breach of such alleged parol contract.

3. That there is no evidence in the case of such a note or memorandum in writing of the alleged contract as will relieve the bar of the statute of frauds.

4. That the alleged parol contract was not one coupled with an interest insofar as the plaintiff was concerned, and the defendant not only had the right to terminate it but did actually terminate it not later than January, 1938, and by reason of such termination, the plaintiff has no claim whatever respecting the nine unsold lots described in Paragraph 3 of the complaint.

5. That the admitted facts, as well as the proof, conclusively show that the plaintiff has collected 10 per cent. commission on all lots he has actually sold, and in addition is withholding $675.00 belonging to defendant and which he has no right to withhold.

This motion having been overruled, defendant announced she had no testimony to offer, but would rely entirely upon her legal grounds. She then moved for a direction of verdict upon the same grounds. This motion was also overruled. Without waiving any of her legal positions, defendant agreed

to accept plaintiff's evidence as to the value of the nine unsold lots, and there being no other possible question of fact, under the evidence, to submit to the jury, a direction of verdict in plaintiff's favor was ordered upon his motion.

The cause is now before me on defendant's motion for a new trial, the grounds of this motion being identical with those upon which the nonsuit was based.

The matter is thus reduced to a single legal issue, raised by the defendant, to wit: Does the oral agreement entered into between plaintiff and defendant come within the provisions of the statute of frauds, because of plaintiff's claim to one-half of the value of the said lots? The defendant vigorously asserts that it does. She embraces within that assertion certain other subsidiary contentions, all of which will be hereafter considered. The legal question involved must be determined in the light of the facts. No dispute exists concerning the facts, and these factual conclusions necessarily follow.

The oral agreement, as alleged by plaintiff, was entered into by defendant. Included in the terms of the contract was a provision under which defendant agreed to pay plaintiff as a part of his compensation for services rendered pursuant thereto, in addition to his commissions on sales made, one-half of the value of any lots remaining unsold after the $5,-000.00 purchase price had been paid; as well as a further provision entitling plaintiff as a portion of his compensation, to one-half of the net profits. The contract was fully performed by plaintiff.

The pertinent section of our statute of frauds (Section 7044, 1932 Code) is as follows: "No action shall be brought whereby to charge * * * the defendant * * * upon any contract or sale of lands, tenements or hereditaments, or any interest in or concerning them * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith."

This section is patterned after and is practically identical in phraseology with the fourth section of the English statute. The meaning of the term "interest in land" and the extent of its application under the provisions of the statute is clearly and concisely stated by a highly respectable authority in the following language: "The term 'interest' in land as used in the statute of frauds, means some portion of the title or right of possession, *and does not include agreements which may affect land but which do not contemplate the transfer of any title, ownership or possession.*" (Italics added.) 20 R. C. L., p. 535.

The very words of the statute "any contract or sale of lands * * * or any interest in or concerning them" contemplate the *sale or transfer* of some title or interest therein, so as to confer upon the transferee some right of possession or ownership. The plaintiff here claims no interest in or title to the land referred to, and it isn't possible to construe the provisions of his oral agreement with defendant as a contract which contemplated the transfer to him of any interest in the land itself. Its value is merely made the measure of his compensation for services rendered as a real estate broked. Upon an analysis of the language of the statute and of the provisions of the agreement, the distinction between the two proves to be substantial and vital.

But the defendant insists that the word "concerning" as used in the statute, must resolve the point in her favor. She claims that the statute in effect, says that no action shall be brought upon any contract "concerning" real estate, unless it be in writing, and that the term "concerning real estate" must be interpreted and applied in its literal sense without relation to the idea of a sale or transfer of title. The effect of this construction would be to render the statute of frauds applicable to every oral agreement which in any manner relates to real property, even though no transfer of any interest whatsoever might be contemplated thereby. I am unable to adopt such a rule of construction. To

do so would, for one thing, be directly contrary to the settled rule which has long been established in this as well as other jurisdictions, holding that a contract under which a real estate broker is employed for the purchase or sale of lands need not be in writing, so far as the recovery of compensation is concerned. Innumerable authorities might be cited on this point. One from our own jurisdiction will suffice.

"A complaint by a broker against a lumber company to recover for timber land purchased for defendant at the rate of 50 cents per thousand feet of timber on the land does not present a contract within the statute of frauds, and need not specify that the contract was partly in writing and partly in parol." (Syllabus.) *Jumper v. Dorchester Lumber Co.,* 119 S. C., 171, 111 S. E., 381.

The statute can only be applied to contracts which have in view the *transfer* of an interest "in or concerning" lands, the word "concerning" being simply synonymous with the word "in".

The defendant relies very strongly, in this connection, upon the case of *Johnston v. La Motte,* 6 Rich. Eq., 347, and particularly upon the following language used by Chancellor Johnston, taken from the report of that case: "All contracts or agreements relating to lands must be in writing." An examination of the case cited shows that the question before the Court was whether an oral agreement for the *conveyance* of a tract of land could be enforced, and the Court held that such an agreement was void. The contract with which the Court is dealing here is a contract of employment, under which plaintiff, as broker, agreed with defendant to negotiate sales of defendant's land, and to receive for his services a stipulated compensation. To such a contract the statute of frauds can have no application, even though, of necessity, it may "relate to" or "concern" the land to which it refers.

By timely motions, as well as by objections to the admissibility of evidence, defendant has at various stages of the

trial further contended that the title to real estate being in question, this Court has no jurisdiction of the subject-matter of the action. What has already been said is no doubt decisive of this as well as of other specific points raised by her, and the entire matter might well rest at this point. I prefer, however, even at the risk of unduly prolonging the discussion, to consider and pass specifically upon the several additional phases of the question as they have been raised by the defendant.

Defendant insists that plaintiff's claim to one-half of the *value* of the lands involved is tantamount in law to claiming *title* to a one-half interest therein, and consequently the only matter is controversy is an interest in the land itself. The contention she makes amounts to saying that the value of a thing, and the thing itself, are one and the same. The value of an article is one of the attributes of the article, and is intangible. The article itself is tangible, and while the one necessarily relates to the other, they are, both in law and logic, separate conceptions. To repeat—in this case the value of the lots represents nothing more than the measure by which one of the elements of plaintiff's compensation for services rendered under the contract is to be determined. Defendant cites, as conclusive authority on this point, the case of *Wells v. Savannah,* 181 U. S., 531, 21 S. Ct., 697, 702, 45 L. Ed., 986. There appears to be no similarity in point of fact, or in the legal issues involved, between the *Wells case* and the case at bar. The *Wells case* was a suit to enjoin the collection of taxes on real estate which was held by plaintiffs under written conveyances. The controversy arose over the rights of the City of Savannah to levy taxes on the lots involved, against those claiming ownership under the written instruments. The Court in the course of its opinion made use of this observation (which is the language relied on by defendant as conclusive authority for her position) : "The value of property consists in its use, and he who owns the use forever, though it be on condition sub-

sequent, is the true owner of the property for the time being. This holds equally of a city lot or of all the land in the world." This language amounts to no more than a statement of one of the recognized meanings of value—that is, utility. The matter of the value of the lots was being considered by the Court in connection with the power of taxation. None of the issues, either of law or fact, before the Court in the *Wells case* could have any bearing on the question involved here.

A case very similar to this in point of fact is that of *Eaton v. Simcovitz*, 239 Mass., 569, 132 N. E., 355. The plaintiff in that case was a real estate broker. He had an oral agreement with the defendant whereby, as compensation for his services in negotiating an exchange of lots between defendant and another, the defendant was to convey to plaintiff three parcels of real estate, or pay him the value thereof. Tht three lots passed out of defendant's possession, one by voluntary conveyance and the others by foreclosure sale. Plaintiff sued for their value as the measure of his compensation. The statute of frauds was invoked by defendant. The Court, in upholding the right of plaintiff to recover his compensation under the oral contract, said: "In our opinion the proper interpretation of the contract, as testified to by the plaintiff, is that it was an alternative one, containing two separate promises, one of which is not within the statute of frauds. The defendant had the option to give the plaintiff a deed of the three parcels of real estate, or to pay him a certain sum of money. This payment of money was not a penalty, or liquidated damages for failure to convey the real estate. * * * And it could be found that he elected to be bound by the alternative to pay the money, as he voluntarily disposed of one of the lots and allowed his title to the others to be lost by the foreclosure of the mortgages on them. This alternative is not within the statute of frauds, and can be enforced. *Smith v. Bergengren* [153 Mass., 236, 26 N. E., 690, 10 L. R. A., 768], *supra; Standard Button Fastening Co. v. Breed.* 163 Mass., 10, 39 N. E., 346; *Glynn v. Moran.*

174 Mass., 233, 236, 54 N. E., 535; *Couch v. Meeker,* 2 Conn., 302, 7 Am. Dec., 274; *Deverill v. Burnell,* L. R., 8 C. P., 475; *Mercier v. Campbell,* 14 Ont. L. R., 639; *Steel v. Peoples Oil & Gas Co.,* 147 Ill. App., 133; *Missouri Edison Electric Co. v. Steinberg Hat & Fur Co.,* 94 Mo. App., 543, 868 S. W., 383. See *Zwicker v. Gardner,* 213 Mass., 95, 99 N. E., 949, 42 L. R. A. (N. S.), 1160."

The further contention is made that a real estate ▮▮ broker is an agent of limited authority, and that his employment can be terminated by his employer at any time, except where it is coupled with an interest. Defendant cites authorities to this effect, relying particularly upon the case of *Hunt v. Rousmanier,* 8 Wheat, 174, 5 L. Ed., 589. The legal principle invoked is sound, and it is supported by the authorities cited, but the principle is not applicable to the established facts of this case. The issue here is not whether the defendant had a right to terminate the agency contract. The question is whether plaintiff is entitled to recover compensation for services which he rendered after the agreement was made with defendant, and before its repudition by her. As a matter of undisputed fact, plaintiff's obligations under the agreement had been fully performed at the time his authority was revoked.

One further legal position is advanced by defendant. ▮ She contends that plaintiff may not, in an action of law, invoke the doctrine of part performance in order to enforce the alleged contract. Plaintiff, however, does not rely upon the part performance doctrine. So far as plaintiff's obligations under the agreement are concerned, the contract has been *wholly* performed. There is nothing left for him to do, and even if the agreement had in its origin been within the statute of frauds, the matter of part performance would now be foreign to the issue. The following authorities, among many others, uphold this view:

"The great weight of authority supports the rule that the statute of frauds has no application where there has been a

full and complete performance of the contract by one of the contracting parties, and the party so performing may sue upon the contract in a Court of law; he is not compelled to abandon the contract and sue in equity or upon a *quantum meruit.*" 27 C. J., p. 350.

To the same effect see the case of *McLellan v. McLellan,* 131 S. C., 245, 126 S. E., 749, 750. In that case the Court, citing the case of *Walker v. Wilmington, C. & A. R. Co.,* 26 S. C., 80, 90, 1 S. E., 366, 372, and quoting therefrom, said: "But even if the contract, when originally made, was obnoxious to the statute, yet, after it had been fully performed by the plaintiff, the defendant could not then avail itself of the statute."

An analogous case, bearing directly upon the point now being discussed, as well as upon the question of whether a contract of this nature is within the statute, is that of *Garrett v. Wall,* 29 Ga. App., 642, 116 S. E., 331. In that case there was involved an oral contract for services rendered by a real estate broker. The transaction concerned certain saw mill timber. The defendant demurred upon the ground (among others) that the contract sued on was not in writing, and therefore unenforceable under the statute of frauds. The Court in passing on that issue held: "A contract for the performance of services such as are above set forth does not come within the provisions of the statute of frauds * * * as constituting a 'contract for the sale of lands, or any interest in, or *concerning* them'; but even if it did, the rule would not be applicable 'where there has been performance on one side, accepted by the other in accordance with the contract.' " (Italics added.)

Reference has not as yet been made to defendant's counterclaim. At the time the controversy arose, plaintiff had in his possession the sum of $675.00 from the proceeds of sale of certain lots, and for this amount defendant interposed a counterclaim. The conclusion which has been reached on the several other issues necessarily disposes of the coun-

terclaim against the contentions of defendant; however, full credit for this amount was allowed the defendant when the verdict was directed.

The several questions raised by the defendant in this case have been so earnestly and vigorously pressed in her behalf that I have given painstaking consideration to the entire matter.

The facts being undisputed and the applicable principles of law being well settled, I find it impossible to reach any other conclusion than that set forth herein.

It is, therefore, ordered that the motion for a new trial be and it is hereby, refused.

*Mr. Henry E. Davis,* for appellant,

*Messrs. McEachin & Townsend,* for respondent,

April 10, 1940.

The opinion of the Court was delivered by MR. E. C. DENNIS, ACTING ASSOCIATE JUSTICE.

This is an appeal from the Civil Court of Florence. A careful study of the testimony and the law shows that R. W. Sharkey, Judge of the Civil Court of Florence, has cov-

ered the facts and the law applicable thereto in an order refusing a new trial.

That order is affirmed and made the opinion of this Court. Let the order of Judge Sharkey refusing a new trial be reported.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.